Richard HILLYARD, Employee–
Claimant–Respondent,

v.

HUTTER OIL COMPANY and Federated Mutual Insurance Company, Employer–Insurer–Appellants, and Second Injury Fund, Respondent.

No. 22260.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 28, 1998.

---

Jeremiah W. (Jay) Nixon, Erwin S. (Chip) Barbre, Jr., for Respondent Second Injury Fund.

SHRUM, Presiding Judge.

This is a workers' compensation case that presents one issue: Does § 287.250.8 (which defines "average weekly wage" for employees having dual employment) enhance the average weekly rate used in calculating the permanent partial disability award for Richard Hillyard (Employee)? The Labor and Industrial Relations Commission (the Commission) answered yes.[1]

Hutter Oil Company (Employer), the party adversely affected by the Commission's ruling, appeals. We affirm.

## FACTS

On February 6, 1995, Employee was shot while working for Employer at one of its "deli" stores. Employee sustained permanent partial disability as a result of this incident. The parties agreed that Employee's permanent partial disability was 176 weeks based on the percent of disability assigned to the injured parts of his body.

Employee held two jobs at the time he was injured, one with Employer and another with Midwest Trailers (Midwest). His average weekly wage with Employer was $181.57. At Midwest, he made $240 per week. Employee adduced uncontroverted evidence that the disabling effect of the injury to his left arm kept him from going back to work at Midwest.

An administrative Law Judge (ALJ) ruled that because of § 287.250.8, Employee's average weekly wage had to be based on the total of his average weekly wage computed separately for each employer. Consequently, Employer owed Employee permanent partial disability benefits based on the maximum rate of $249.48 per week. The ALJ awarded Employee $43,908.48 as his total permanent partial disability benefit ($249.48 × 176 weeks).

Employer sought the Commission's review of the ALJ's decision. The Commission af-

Kenneth L. Dement, Jr., for Appellants.

Stephen L. Taylor, for Respondent Hillyard.

1. All statutory references are to RSMo 1994 unless otherwise indicated.

firmed and, in the process, adopted the ALJ's award and decision by reference. Employer appeals from the Commission's award.

## DISCUSSION AND DECISION

In 1993, the Missouri legislature did a major overhaul of Chapter 287, "The Workers' Compensation Law." Until then, Chapter 287 made no special provisions for employees who had multiple or concurrent employers. Thus, even when an employee had more than one job, the only employer liable was the one for whom the employee was working when injured. *See Glazebrook v. Hazelwood Sch. Dist.*, 498 S.W.2d 823, 827[6] (Mo.App.1973). The wage base and compensation rate for such an employee was based solely on what he earned on the job where the injury occurred. *Id.* at 826–29.

Among the forty-four new sections of The Workers' Compensation Law enacted in 1993, two have paragraphs that mention concurrent or multiple employers. The first, § 287.220.9, has a sunset clause effective August 28, 1996. In its entirety, § 287.220.9 provides:

"9. Any employee who at the time a compensable work-related injury is sustained is employed by more than one employer, the employer for whom the employee was working when the injury was sustained shall be responsible for wage loss benefits applicable only to the earnings in that employer's employment and the injured employee shall be entitled to file a claim against the second injury fund for any additional wage loss benefits attributed to loss of earnings from the employment or employments where the injury did not occur, up to the maximum weekly benefit less those benefits paid by the employer in whose employment the employee sustained the injury. The employee shall be entitled to a total benefit based on the total average weekly wage of such employee computed according to subsection 8 of section 287.250. The employee shall not be entitled to a greater rate of compensation than allowed by law on the date of the injury. The employer for whom the employee was working where the injury was sustained shall be responsible for all medical costs incurred in regard to that injury. The provisions of this subsection shall expire on August 28, 1996."

The second mention of multiple employers in the 1993 enactment is in § 287.250.8, the section referenced in § 287.220.9. In its entirety, § 287.250.8 provides:

"8. For an employee with multiple employments, the employee's total average weekly wage shall be equal to the sum of the total average weekly wage computed separately for each employment pursuant to the provisions of this section *to which the employee is unable to return because of his injury.*" (emphasis supplied).

Employer's only point relied on charges that the Commission erred when it ruled that the "multiple employments" formula in § 287.250.8 should be used when calculating the total permanent partial disability benefit owed to Employee. Employer argues that the "multiple employments" calculation of "average weekly wage," as prescribed in § 287.250.8, has limited application. Specifically, Employer asserts:

"The only clear purpose for [§ 287.250.8] is to provide the method for compensation computation in conjunction with the Second Injury Fund liability for wage loss benefits pursuant to [§ ] 287.220.9. Therefore, [§ ] 287.250.8 is simply the means of calculating temporary total disability benefits for determining the extent of the Second Injury Fund liability under [§ ] 287.220.9."

With the foregoing as its premise, Employer insists that the Commission should have based Employee's permanent partial disability award on his weekly earnings from Employer, i.e., $181.57, rather than the maximum figure of $240 per week that resulted under the "multiple employments" calculation found in § 287.250.8.

We undertake our analysis of Employer's point with these principles in mind. Provisions of The Workers' Compensation Law are "liberally construed with a view to the public welfare." § 287.200. *See Sanders v. St. Clair Corp.*, 943 S.W.2d 12, 17 (Mo.App. 1997); *Glazebrook*, 498 S.W.2d at 826. "All

doubts should be resolved in favor of the employee and this rule is applicable ... in the computation of the wage base." *Glazebrook*, 498 S.W.2d at 826[4]. On the other hand, the rule of liberal construction does not authorize the allowance of a claim that lacks an essential element required by the law. *Sanders*, 943 S.W.2d at 17[9].

■ In matters of statutory construction, the intent of the legislature controls. *O'Flaherty v. State Tax Comm'n of Mo.*, 680 S.W.2d 153, 155[3] (Mo.banc 1984). The only subordinate cannons of construction that should be used are those which "subserve rather than subvert legislative intent." *Tribune Publ'g Co. v. Curators of Univ. of Mo.*, 661 S.W.2d 575, 583[4] (Mo.App.1983). Also, courts assume that all laws are passed with a view to the welfare of the community at large. *Cohen v. Poelker*, 520 S.W.2d 50, 52 (Mo.banc 1975).

Here, Employer argues, *inter alia*, that *if the legislature intended to enhance permanent partial disability benefits for employees having multiple jobs, then such provision "would have been clearly and distinctly included in [§ ] 287.250.8, or a separate statute."* That argument ignores the converse and more likely proposition that if the legislative intent for § 287.250.8 was to only provide a method to calculate the Second Injury's Fund's liability for temporary total disability as Employer contends, then the logical place for such provision was in § 287.220.9 or in a separate subparagraph in § 287.220 that referred to § 287.220.9. By such an arrangement, the legislature would have clearly shown its intent regarding multiple employment claims to be as Employer contends. However, that is not what the legislature did.[2]

■ By "sunset" language, the legislature eliminated the Second Injury Fund's liability for temporary total disability benefits effective August 28, 1996, yet left the "multiple employment" language of § 287.250.8 intact. Adopting Employer's argument would mean § 287.250.8 has no utility for employees injured after August 28, 1996. We are not persuaded that was the legislature's intention. Such result runs counter to the precept that "a change in a statute is ordinarily intended to have some effect." *State ex rel. Thompson–Stearns–Roger v. Schaffner*, 489 S.W.2d 207, 212[2] (Mo.1973). It would require us to presume that the legislature intended a useless act when it left § 287.250.8 on the books after § 287.220.9 expired. We will not engage in such a presumption. *Id.*

Employer also points to the language in § 287.250.8 that we italicized and argues that it demonstrates a legislative intent that such section (§ 287.250.8) is for calculating compensation for the period of time the employee was unable to return to work, i.e., "to provide ... a method of calculating the Second Injury Fund's liability for temporary total disability only." Employer insists the foregoing arguments logically follow "because an employee would have to be *totally disabled* in order to be unable to return to work." We disagree. The legislature explicitly defined the words "total disability" in § 287.020.7.[3] We believe it reasonable to assume that if the legislature intended § 287.250.8 to apply only to "totally disabled" employees as Employer contends, it would have used those words in its enactment. *See A.M.G. v. Mo. Div. of Family Services*, 660 S.W.2d 370, 371[5] (Mo.App.1983) (holding that when construing statutes, it is reasonable to presume that words have same meaning in every place used). The absence of the phrase "totally

---

**2.** Effective August 28, 1998, § 287.250.8 was amended by adding the language italicized below:

"8. For an employee with multiple employments, *as to the employee's entitlement to any temporary total or temporary partial disability benefits only pursuant to subsection 9 of section 287.220, and for no other purposes*, the employee's total average weekly wage shall be equal to the sum of the total of the average weekly wage *computed separately* for each employment pursuant to the provisions of this section

to which the employee is unable to return because of ... *this* injury."

Employer does not contend that the foregoing revision applies retroactively or that it is evidence of legislative intent in 1993.

**3.** § 287.020.7 provides: "7. The term 'total disability' as used in this chapter shall mean inability to return to any employment and not merely mean inability to return to the employment in which the employee was engaged at the time of the accident."

disabled" in § 287.250.8 evidences a legislative intent contrary to that which Employer contends. Moreover, when read in context the phrase *"employment ... to which the employee is unable to return because of injury"* clearly provides a method for computing "total average weekly wage" for any employee who is unable to return to at least one of his or her concurrent employments, not just "totally disabled" employees as Defendant contends.

▪ Employer's final argument points out that §§ 287.220.9 and 287.250.8 refer only to "earnings" and "wage loss" with absolutely no mention of any kind of "disability". Continuing, Employer reasons that since "disability" does not appear anywhere in the wage loss provisions, this shows that there was no legislative intent for § 287.250.8 "to be a method of computing Employer's liability for permanent partial disability from multiple employments." By this argument, Employer would have us look at these two sections in isolation, which we will not do. When interpreting legislation, "a proper analysis ... considers the context in which the words are used and, importantly, the problem the legislature sought to address with the statute's enactment." *Mabin Const. Co. Inc. v. Historic Constructors, Inc.*, 851 S.W.2d 98, 100[3] (Mo.App.1993). It is fundamental that a section of a statute should not be read in isolation from the context of the whole act. *State v. Haskins*, 950 S.W.2d 613, 615[5] (Mo.App.1997).

The Commission, in its analysis, did consider paragraph 8 of § 287.250 in the context of all sections of § 287.250. Specifically, the Commission pointed out that the first sentence in § 287.250.1 reads: "1. Except as otherwise provided for in this chapter, the method of computing an injured employee's average weekly earnings *which will serve as the basis for compensation provided in this chapter*, shall be as follows:" (emphasis supplied). From this language, the Commission reasoned that "unless specifically provided, the average weekly wage computed under [§ ] 287.250 is to be used as the basis for determining all compensation, including ... permanent partial disability ... benefits." The Commission then noted that the only

subsection of § 287.250 that specifically limits its application is subsection 6. Under subsection 6, the average weekly wage for a minor employee can be increased to reflect his or her potential for increased earnings. However, benefits are limited in that subsection to permanent partial disability, permanent total disability, and death benefits, thereby excluding temporary total disability benefits. The Commission's analysis continues:

> "Unlike [§ ] 287.250.6, [§ ] 287.250.8 does not contain any language limiting its application to certain benefits. [Employer] argues that the phrase 'for each employment ... to which the employee is unable to return because of injury' should be construed to limit the application of this section to the payment of temporary total disability benefits. This argument ignores the plain, grammatical construction of this sentence. The 'phrase 'to which the employee is unable to return' modifies the work 'employment' and, therefore, excludes wages from other concurrent employers if the employee was able to keep working. Nothing in this sentence indicates the total average weekly wage as computed under this section should only be used to determine temporary total disability benefits.
>
> Given this construction, under [§ ] 287.250.8 RSMo., [E]mployee's average weekly wage in this case should be based on the total of his average weekly wage computed separately for each employer. Absent some other savings provision under Chapter 287 [Employer] would then be liable for temporary total disability and . permanent partial disability benefits based on [E]mployee's total average weekly wage from his multiple employments with Hutter Oil Company and Midwest Trailers."

▪ We view the Commission's interpretation as reasonable and consistent with the language of § 287.250. As such, it is entitled to considerable deference. *See State v. Missouri Resource Recovery*, 825 S.W.2d 916, 931[8] (Mo.App.1992).

We presume the legislature knew the law when it enacted § 287.250.8 and intended to effect some change in the existing law. *See*

**80**

*Garibay v. Treasurer of Missouri,* 930 S.W.2d 57, 60 (Mo.App.1996). It is also reasonable to conclude, therefore, that in 1993 when the legislature authorized extra benefits for employees holding two jobs, it was aware that *Glazebrook* had rejected that concept under the pre–1993 version of § 287.250. *See Carter v. Pottenger,* 888 S.W.2d 710, 714 (Mo.App.1994). With that implied knowledge, the legislature did not place the "multiple employments" formula for calculating average weekly wage. in the "second injury fund" section, § 287.220. Instead, it made that calculation a part of § 287.250. From that placement, we discern a legislative intent to enhance more than just "wage loss benefits."

Applying the rule that any doubt on this issue is to be resolved in favor of the employee, *Glazebrook,* 498 S.W.2d at 826, we conclude that under § 287.250, the Commission was correct when it ruled that Employer was liable for permanent partial disability benefits based on Employee's total average weekly wage from his multiple jobs with Employer and Midwest.[4]

The award of the Labor and Industrial Relations Commission is affirmed.

MONTGOMERY, J., and GARRISON, C.J., concur.

---

4. In the last paragraph of the argument portion of its brief, Employer argues that if this court is persuaded that § 287.250.8 "is the method of calculating permanent partial disability benefits in the multiple employment situation, cross-referencing of [§ ] 287.220.9 with [§ 287.250.8] would be the means for calculating the Second Injury Fund's liability for permanent partial disability rather than the Employer's." This six-line argument was alluded to only in the argument portion of the brief and is not part of the point relied on. Issues raised only in the argument portion of the brief are not preserved for review. *Boatmen's Bank of Southern Missouri v. Foster,* 878 S.W.2d 506, 509[5] n. 4 (Mo.App.1994). Moreover, Employer has not supported this contention with relevant authority or argument beyond conclusions; consequently, the point is considered abandoned. *Luft v. Schoenhoff,* 935 S.W.2d 685, 687[6] (Mo.App.1996).