Roy GEORGE, Respondent/Employee,

v.

CITY OF ST. LOUIS, Appellant/Employer,

and

Treasurer of the State of Missouri, Custodian of the Second Injury Fund, Respondent.

No. ED 84730.

Missouri Court of Appeals, Eastern District, Division Two.

Jan. 25, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 23, 2005.

Application for Transfer Denied May 31, 2005.

Robert L. Lying, Deputy City Counselor, St. Louis, MO, for appellant.

David M. Kenyon, Rebecca K. Wright, Asst. Atty. Gen., St. Louis, MO, for Respondent.

ROBERT G. DOWD, JR., Judge.

The City of St. Louis (City) appeals from the decision of the Labor and Industrial Relations Commission (Commission) awarding Claimant total disability benefits and finding no Second Injury Fund (Fund) liability. The Commission reversed the award of the Administrative Law Judge (ALJ) denying benefits to Claimant on the grounds that Claimant failed to show he had been exposed to unusual stress pursuant to Section 287.120.8, RSMo 2000[1] at his employment with the City. On appeal, the City argues the Commission erred (1) in awarding benefits to Claimant because he failed to meet his burden of proof of a compensable mental injury under Section 287.120.8, (2) in interpreting Section 287.120.10 as exempting firefighters from the extraordinary and unusual work stress requirement under Section 287.120.8, and (3) in finding no Fund liability. We affirm.

Claimant is a sixty-two-year-old man with associate degrees in fire protection and fire safety. At the time of the hearing, Claimant testified he had been placed on disability retirement from his job as Battalion Fire Chief.[2] Claimant testified he served in the Army and was assigned to Vietnam. During his one year tour of duty in Vietnam, Claimant stated he witnessed and was a participant in numerous events that left indelible scars on his memory. He stated he came close to death many times. He witnessed people burning and being blown up by mines. He had to shoot at enemy soldiers who used children as shields.

When Claimant returned from Vietnam, he was treated at the Veterans Administration Hospital (VA) from 1969 until 1972 for post-traumatic stress disorder (PTSD). A social worker commenting on the intake interview with Claimant indicated that he

---

1. Unless otherwise indicated all further statutory references are to RSMo 2000.

2. The date of "Accident or Occupational Disease" is listed as September 24, 1997, the date of Claimant's retirement from the City.

was "quite shaky" and having "bad dreams" as a result of combat in Vietnam.

In 1969, Claimant returned to his old job with the Postal Service. Claimant testified he did not feel the Postal Service was making the best use of his talents and that he wanted to help people. In 1972, around the time he stopped receiving treatment at the VA, Claimant started his career as a firefighter at the rank of private. He worked for the City fire department for twenty five years and ultimately achieved the rank of Battalion Fire Chief. Over the course of his career as a firefighter, he was called to the scene of hundreds of fires.

In approximately 1984, while on duty, Claimant heard the call on the radio that his home was on fire. Both his wife and son were injured but recovered. When he arrived at his home, Claimant saw his wife being removed on a gurney. He initially thought his wife might be dead. After this incident, Claimant began having nightmares and flashbacks to his wartime experiences in Vietnam. Later, in approximately 1995, the home of Claimant's daughter caught fire. She suffered second and third degree burns.

In addition to the fires in his own home and the home of his daughter, several other work-related incidents exacerbated Claimant's chronic problem with PTSD and depression. On one occasion, a mother was "hollering about her child being lost upstairs." Claimant and other firemen looked for the child. When they found the child in the fire, the child was dead. The woman was yelling, "My child, my child." This event reminded Claimant of an incident in Vietnam where a fellow soldier was burning on the back of a tank and was yelling, "Momma, Momma" and Claimant could not help him. On another occasion, Claimant witnessed an overturned bus with children thrown out around the interstate. Claimant recalled that some of the

children were dead. This incident caused Claimant to suffer a flashback to Vietnam when a motorized scooter overloaded with kids passed a group of soldiers, among whom was Claimant. After passing the soldiers, the scooter hit a tank mine and all the children were killed. Two other work incidents occurred shortly before Claimant retired that stuck in his memory: having to deal with the burned and dead bodies of a three-year-old girl and an elderly man in a wheelchair.

In 1989, Claimant came under the medical care of Dr. David Lee Ohlms, a psychiatrist. Dr. Ohlms testified live at the hearing. He testified he diagnosed Claimant as having severe PTSD and major recurrent depression. He explained "[e]verything that went on in his job ... sort of chipped away at his strength and he became more and more brittle to the traumas of being a fireman." Dr. Ohlms further explained that with PTSD, the patient should try to avoid situations that make the person relive the same feelings as the flashbacks involve. Dr. Ohlms concluded, however, that Claimant could not avoid such situations because, "He was going to see buildings on fire. He was going to see people injured. He was going to see people dead. And all that added on."

Dr. Ohlms also discussed the nature of Claimant's depression and the relationship between the depression and the PTSD. He admitted that medical science cannot explain what causes depression. On the other hand, he stated that PTSD and depression feed on each other and that "it's almost impossible ... to separate the two." Dr. Ohlms opined that if Claimant had entered a different profession after Vietnam, he probably would not have been permanently totally disabled.

The ALJ found in favor of the City noting that Claimant had failed to prove "unusual strain" pursuant to Section

287.120.8. The Commission reversed the award of the ALJ and awarded permanent total disability to Claimant and found no Fund liability. This appeal follows.

We review the decision of the Commission pursuant to Section 287.495. We may modify, reverse, remand for hearing, or set aside the Commission's award only if we find: (1) that the Commission acted without or in excess of its powers; (2) that the award was procured by fraud; (3) that the facts found by the Commission do not support the award; or (4) that there was not sufficient competent evidence in the record to warrant the making of the award. *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222 (Mo. banc 2003). We examine the whole record to determine if it contains sufficient competent and substantial evidence to support the Commission's award. *Id.* at 222–223. We will set aside the Commission's factual findings and resulting award if it is contrary to the overwhelming weight of the evidence. *Id.* We review issues involving questions of law de novo. Section 287.495.1.3 and .4. However, we liberally construe all provisions of the workers' compensation law to favor the employee. *McDermott v. City of Northwoods Police Dept.,* 103 S.W.3d 134, 138 (Mo.App. E.D. 2002).

In addition, the Commission is the ultimate trier of fact. *Uhlir v. Farmer,* 94 S.W.3d 441, 445 (Mo.App. E.D.2003). Questions regarding medical causation of an injury are issues of fact for the Commission, as are questions regarding medical treatment. *Id.* The Commission is the sole judge of the weight of the evidence and credibility of the witnesses. *Id.* It is in the Commission's sole discretion to determine the weight to be given expert opinions. *Id.*

In its first point, the City argues the Commission erred in awarding benefits to Claimant because he failed to meet his burden of proof of a compensable mental injury. Specifically, the City contends Claimant failed to prove that the mental injury he suffered resulted from work-related stress considered extraordinary and unusual when measured by objective standards and actual events as required by Section 287.120.8. We disagree.

Workers' compensation law is entirely statutory, and when interpreting the law, we must ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and give effect to that intent if possible. *Greenlee v. Dukes ·Plastering Service,* 75 S.W.3d 273, 276 (Mo. banc 2002). Sections 287.120.8, .9, and .10, which are often read together, provide as follows:

8. Mental injury resulting from work related stress does not arise out of and in the course of the employment, unless it is demonstrated that the stress is work related and was extraordinary and unusual. The amount of work stress shall be measured by objective standards and actual events.

9. A mental injury is not considered to arise out of and in the course of employment if it resulted from any disciplinary action, work evaluation, job transfer, layoff, demotion, termination or any similar action taken in good faith by the employer.

10. The ability of a firefighter to receive benefits from psychological stress under Section 287.067 shall not be diminished by the provisions of subsections 8 and 9 of this section.

Section 287.120.8 sets out the general rule that disabilities arising from work related stress are subject to the "unusual strain" doctrine. However, Section 287.120.10 exempts firefighters from this

doctrine in cases of psychological stress under Section 287.067. Section 287.067 deals with claims resulting from occupational diseases. The pertinent sections of the statute provide as follows:

1. In this chapter the term "occupational disease" is hereby defined to mean ... an identifiable disease arising with or without human fault out of and in the course of the employment. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where the diseases follow as an incident of an occupational disease as defined in this section. The disease need not to have been foreseen or expected but after its contraction it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence.

2. An occupational disease is compensable if it is clearly work related and meets the requirements of an injury that is compensable as provided in subsections 2 and 3 of section 287.020. An occupational disease is not compensable merely because work was a triggering or precipitating factor.

❖ ❖ ❖ ❖ ❖ ❖

5. Disease of the lungs or respiratory tract, hypotension, hypertension, or disease of the heart or cardiovascular system, including carcinoma, may be recognized as occupational diseases for the purposes of this chapter and are defined to be disability due to exposure to smoke, gases, carcinogens, inadequate oxygen, or psychological stress of firefighters of a paid fire department if a direct causal relationship is established.

Section 287.067.5 enumerates certain diseases which are normally noncompensable but are compensable for firefighters if they are shown to have been directly caused by a firefighter's exposure to smoke, gases, carcinogens, inadequate oxygen, or psychological stress.[3]

Here, the ALJ construed Section 287.120.10's exception too narrowly in concluding the exception for firefighters applied only to Section 287.067.5. Psychological stress is referenced in Section 287.067.5 as a causative factor, not as a separate disease or disability and the diseases specifically mentioned in that section are not an exhaustive list. The exception also includes Section 287.067.1, which defines an occupational disease as one which has its origin in a risk associated with the employment and which "flowed" as a rational consequence from that source, and Section 287.120.2, which states that an occupational disease is compensable if it is work related and meets the requirements of injury under Sections 287.020.2 and .3. Claimant's PTSD satisfied the requirements of Sections 287.067.1 and .2. Furthermore, Claimant's performance of his usual and customary duties as a firefighter was a substantial factor in causing his PTSD and exacerbating his depression.

 At the hearing, Claimant offered extensive testimony of the specific traumatic events he experienced in his military service and in his career as a firefighter. In addition, Dr. Ohlms testified that the effect of repeated psychological trauma "chipped away at [Claimant's] strength....Every day the things that went on in the fire department: injuries, fires, risk, dangers, et cetera, et cetera, all that building up, building up, and building up until he no longer felt he could handle it. He could not face another day doing that." The Commission found Claimant

---

**3.** Specifically, these are "lung and respiratory disease, high and low blood pressure, and diseases of the heart and circulatory system." Section 287.067.5.

sustained a relapse of the PTSD he suffered as a result of psychological trauma he sustained during military service in Vietnam. In general, if a claimant can show that the performance of his usual and customary duties leads to a breakdown or change in pathology, the injury is compensable. *Bennett v. Columbia Health Care*, 80 S.W.3d 524, 529 (Mo.App. W.D.2002). The worsening of a preexisting condition is a change in pathology and is a compensable injury. *Id.*

Here, the ALJ's denial of benefits because Claimant's job stresses were not extraordinary and unusual, as compared objectively with other firefighters of equal rank, was erroneous. Reading Sections 287.120.10, 287.067.1 and .2 together, the Commission's finding that Claimant had established a compensable occupational disease is supported by sufficient competent evidence. Point one is denied.

In its second point, the City argues the Commission erred in interpreting Section 287.120.10 as exempting firefighters from the extraordinary and unusual work stress requirement under Section 287.120.8. The City contends that Section 287.067.5 limits a firefighter's ability to receive benefits for psychological stress to specific physical maladies, such as a heart attack or hypertension. We disagree.

Here, the ALJ erred by looking only to Section 287.067.5 as the provision that defined psychological stress as an occupational disease. Instead, Claimant established he had an occupational disease under Section 287.067.1 and .2. Claimant's PTSD was not an ordinary disease to which the general public was exposed outside the course of employment. Furthermore, PTSD "flowed" as a rational consequence of the employment. There was sufficient competent evidence to show that Claimant established he had a compensable occupational disease. Point two is denied.

In its third point, the City argues the Commission erred in finding no Fund liability. We disagree.

The Commission is the ultimate trier of fact and the determination of a specific amount or percentage of disability awarded to a claimant is a finding of a fact within the province of the Commission. *Ransburg v. Great Plains Drilling*, 22 S.W.3d 726, 732 (Mo.App. W.D.2000). So long as the decision is supported by competent and substantial evidence, we will not disturb the Commission's findings. *Id.* Here, the Commission's decision is supported by substantial and competent evidence that Claimant was a functional employee for many years and that it was his work as a firefighter and the traumas he endured in that capacity that was more likely than not the cause of his permanent and total disability. The Commission properly assessed all liability for Claimant's permanent total disability against the City. Point three is denied.

Judgment affirmed.

PATRICIA L. COHEN, P.J. and KATHIANNE KNAUP CRANE, J., concur.