**Robert COX, Respondent,**

v.

**Richard COLLINS, Jr., Respondent,**

**Treasurer of the State of Missouri—Custodian of the Second Injury Fund, Appellant.**

**No. WD 65363.**

Missouri Court of Appeals, Western District.

Feb. 28, 2006.

Jeremiah W. (Jay) Nixon, Atty. Gen., Christina Hammers, Office of Attorney General, Jefferson City, for Appellant.

Lisa Rae McWilliams, for Robert Cox, John R. Emerson, for Richard Collins, Jr., Kansas City, KS, for Respondent.

RONALD R. HOLLIGER, Judge.

The question is whether the Second Injury Fund or the employer at the time of injury should pay that portion of permanent disability benefits attributable to the employee's income with his second employer. More precisely the issue is whether the term "wage loss benefits" in the version of Missouri Revised Statutes section 287.220.9 (1993) that was in effect for a narrow window of time—including the date of this accident—includes benefits payable for *permanent* total disability benefits or only for *temporary* total benefits. The Industrial Commission found that the Second Injury Fund was responsible for the difference and the Fund now appeals. Affirmed.

## FACTS

On July 8, 1995, Robert Cox (hereinafter "Employee") was working as a part-time laborer for Collins Construction (hereinafter "Employer"). While working on a rooftop, he became dizzy and, while attempting to descend a ladder from the rooftop, lost consciousness and fell about ten feet to the ground. Employee sustained injuries resulting in permanent paralysis from the chest down and is confined to a wheelchair. At the time of his injury, Employee also had another job as a mechanic at Wal–Mart.

After Employee's injury, he was unable to successfully return to either of his jobs. The Employee, Employer, and Second Injury Fund have stipulated that the Employee reached maximum medical improvement on February 28, 1998. All parties have also stipulated that the Employee has been permanently and totally disabled since the date he reached maximum medical improvement.

At the final hearing on his claim before the Administrative Law Judge ("ALJ"), Employee sought from his Employer and/or the Second Injury Fund that portion of total permanent total disability benefits resulting from lost wages at his Wal–Mart job—his second job where he was not injured yet still could not return to work. The Fund admitted that it was liable for the Wal–Mart benefits for the period of time that Employee was temporarily and totally disabled (July 9, 1995—the day after injury—through February 28, 1998—the date of maximum medical improvement), but denied that it was liable for the permanent and total benefits resulting from the loss of Wal–Mart wages. Rather, the Fund contended that Collins Construction was responsible for that portion of the permanent total benefits as well.

Following the hearing, the ALJ found that Employee was permanently and totally disabled due to his work-related injury and that, under the statutes in effect at the time of Employee's injury, the Second Injury Fund was liable for Employee's permanent total disability benefits resulting from the loss of his Wal–Mart wages. The judge ordered Employer to pay Employee the weekly permanent total disability rate based upon his employment with Collins Construction, for the rest of his life. The judge also ordered the Second Injury Fund to pay the weekly permanent total disability rate based upon his em-

ployment at Wal–Mart, for the remainder of Employee's life. The Labor and Industrial Commission affirmed the award, and the Second Injury Fund now appeals, asserting that under the former versions of sections 287.220.9 and 287.250.8 the Employer, not the Fund, is liable for the permanent total benefits stemming from the Wal–Mart employment.

## STANDARD OF REVIEW

In an appeal from a final workers' compensation award by the Labor and Industrial Relations Commission, this court reviews the findings and award of the Commission, rather than those of the (ALJ). *Birdsong v. Waste Mgmt.*, 147 S.W.3d 132, 137 (Mo.App. S.D.2004). However, when the Commission incorporates the ALJ's award and decision in its own determination, as in this case, we review the ALJ's findings and conclusions, as adopted by the Commission. *Id.* The scope of our review is controlled by statute:

> The court, on appeal, shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds and no other: (1) That the commission acted without or in excess of its powers; (2) That the award was procured by fraud; (3) That the facts found by the commission do not support the award; (4) That there was not sufficient competent evidence in the record to warrant the making of the award.

Mo.Rev.Stat. Section 287.495.1 (2000). "Whether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record. An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence." *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. banc 2003). We defer to the Commission on fact issues but review questions of law, such as the interpretation of statute, *de novo*, liberally construing all provisions to favor the employee. *George v. City of St. Louis*, 162 S.W.3d 26, 30 (Mo.App. E.D.2005).

## DISCUSSION

The Second Injury Fund ("the Fund") was created in 1943 for the purpose of encouraging the employment of the physically disabled. *Stewart v. Johnson*, 398 S.W.2d 850, 853 (Mo.1966). Until 1993 the Workers' Compensation Act did not provide additional benefits for employees who had multiple employers. The authority for the receipt of these additional benefits flows from Missouri Revised Statutes sections 287.220.9 and 287.250.8 (Cum.Supp. 1993). Prior to the enactment of these provisions, an employee with multiple jobs was only entitled to receive benefits for lost wages from the employment at which he or she was injured; but under the provisions adopted in 1993, the employee can recover benefits for his time away from the employment where he was not injured, as well. The 1993 enactments require the Fund to provide certain benefits for employees who have multiple jobs and sustain an injury that prevents them from working both jobs. The dispute here is over what benefits the Fund must provide. The Fund concedes that under those enactments it is responsible for a portion of temporary total benefits earned during the employee's healing period. It contends, however, that it is not responsible for any portion of the permanent total benefits awarded the employee herein but that his employer should pay all benefits for permanent total disability.

Cox was injured on July 8, 1995, and the resolution of our issue depends upon the meaning and effect of section 287.220.9 as of that date. It reads:

Any employee who at the time a compensable work-related injury is sustained is employed by more than one employer, the employer for whom the employee was working when the injury was sustained shall be responsible for wage loss benefits applicable only to the earnings in that employer's employment and *the injured employee shall be entitled to file a claim against the second injury fund for any additional wage loss benefits attributed to loss of earnings from the employment or employments where the injury did not occur, up to the maximum weekly benefit less those benefits paid by the employer in whose employment the employee sustained the injury. The employee shall be entitled to a total benefit based on the total average weekly wage of such employee computed according to subsection 8 of section 287.250.* The employee shall not be entitled to a greater rate of compensation than allowed by law on the date of the injury. The employer for whom the employee was working where the injury was sustained shall be responsible for all medical costs incurred in regard to that injury. *The provisions of this subsection shall expire on August 28, 1996.*

Mo.Rev.Stat. (Cum.Supp.1993) (emphasis added). As part of the same 1993 enactment (SB 251) the legislature enacted Section 287.250.8 establishing the computation of average weekly wages where an injured

employee had multiple employers. In 1993, section 287.250.8 provided:

For an employee with multiple employments, the employee's total average weekly wage shall be equal to the sum of the total average weekly wage computed separately for each employment pursuant to the provisions of this section to which the employee is unable to return because of the injury.

Section 287.220.9 was amended in 1998 to eliminate the "sunset" provision in the last sentence.[1] Section 287.250.8 was also amended in 1998 to restrict its application to only provide benefits for temporary disability.[2] *See Ristau v. DMAPZ, Inc.,* 130 S.W.3d 602, 606 (Mo.App. W.D.2004).

The Fund cites *Hillyard v. Hutter Oil Company,* 978 S.W.2d 75 (Mo.App. S.D. 1998), and asserts that it controls the issues of this case. Mr. Hillyard was shot in 1995 (while the same 1993 statutory scheme with which we are concerned was in effect) while working for a deli (his injury Employer). *Id.* at 76. He also worked at Midwest Trailers. *Id.* He suffered permanent partial disability but apparently was unable to return to work at all for Midwest. *Id.* The Commission calculated Hillyard's average weekly wage under section 287.250.8 using the wages from both employers and ordered Hutter Oil (the injury Employer) to pay benefits calculated from both employers. *Id.* The appellate court affirmed, but did not re-

---

1. Although not at issue in our case, the general rule seems to be that the repeal of a "sunset clause" in a statute effectively revises the statute in its former version. *See State v. Chadeayne,* 323 S.W.2d 680, 684 (Mo. banc 1959); *see also In re Grand Jury Subpoenas Duces Tecum,* 78 F.3d 1307, 1311–12 (8th Cir.1996).

2. Section 287.250.8 now provides: "For an employee with multiple employments, *as to the employee's entitlement to any temporary total or temporary partial disability benefits*

*only pursuant to subsection 9 of section 287.220, and for no other purposes,* the employee's total average weekly wage shall be equal to the sum of the total of the average weekly wage computed separately for each employment pursuant to the provisions of this section to which the employee is unable to return because of this injury." Mo.Rev.Stat. (2000) (emphasis added). The significance of the language in this amendment will be discussed later.

solve the question we face here, as we discuss further below.

The Fund's argument here leans heavily on a quote from Hillyard: "By 'sunset' language, the legislature eliminated the Second Injury Fund's liability for *temporary total disability* benefits effective August 28, 1996, yet left the 'multiple employment' language of Section 287.250.8 intact." *Id.* at 78. (emphasis added). The quote is, of course, referring to the original language of section 287.220.9 that cut off the section's application on August 28, 1996. The Fund argues that this sentence from the *Hillyard* opinion means that section 287.220.9 was limited in its application to only temporary total disability benefits because the court mentioned no other kind of benefits that would be eliminated upon the triggering of the sunset provisions of the statute.

This statement from *Hillyard* is of course dicta. Interestingly, in a footnote the court said that the Employer had raised an argument briefly that if section 287.250.8 were "the method of calculating permanent partial benefits in the multiple employment section, cross-referencing of section 287.220.9 with [section 287.250.8] would be the means for calculating the Second Injury Fund's liability for permanent partial disability rather than the Employer's." *Id.* at 80 n. 4. In other words, the Employer was arguing for a similar result to the issue here of whether the Fund was liable for permanent benefits (albeit partial rather than total). The *Hillyard* court, however, held that this argument was abandoned because not raised in the point relied upon. *Id.* Because *Hillyard* did not resolve the question, it provides us no assistance in resolving the issue we now face.

The Fund quotes language from another case, *Stark v. Missouri State Treasurer*, 954 S.W.2d 645, 647 (Mo.App. W.D.1997),

indicating that the plain meaning of section 287.220.9 shows an intent by the legislature to "limit the duration" of wage loss benefits. The Fund alleges that the court was restricting section 287.220.9's application to temporary total benefits when it indicated that the legislature's intent was to limit the duration of benefits recoverable under the statute. Ms. Stark was injured on July 16, 1993, *before* the 1993 amendments took effect. *Id.* at 646. She claimed temporary total benefits for a six-week period from her second employment and claimed that the Fund should pay them. *Id.* This court held that the 1993 amendments that we deal with now were not retroactive and denied her claim. *Id.* at 647. Frankly, the limited duration language quoted by the Fund is not clear to us, nor does it make any sense in the context of Ms. Stark's claim for six weeks of *temporary* total benefits. Most importantly, however, it is dicta, since the court was not required to interpret the 1993 amendments as part of its decision.

Finally, the Fund argues that our decision in *Ristau* reaffirms the holdings in *Stark* and *Hillyard* that the Fund's liability for second job wage loss is for temporary total disability only. First we note that *Ristau* does not even mention *Stark* and cites *Hillyard* only for the history of second job benefits *prior* to the 1993 enactments. 130 S.W.3d at 606. And, as the Fund acknowledges, *Ristau* involves a claim for an injury after the 1998 amendments. *Id.* at 604.

■ *Ristau* does, however, provide us some guidance in our inquiry as to the meaning of the 1993 amendments. Ms. Ristau sought additional death benefits from the Fund representing her deceased husband's wage losses from his second employment. *Id.* We held that the 1998 amendments evidenced a clear legislative intent that Fund liability for second job

wage loss benefits was limited to temporary total benefits. *Id.* at 605. In part we based our decision on the maxim that "[a] change in a statute is ordinarily intended to have some effect." *Id.* at 606 (citation omitted). Specifically we said that the 1998 amendment "demonstrates the legislature's intent to limit the Fund's liability for benefits under section 287.220.9 to temporary disability benefits as calculated in subsection 8 of section 287.250." *Id.* Here the Fund urges that its liability was already so limited and in effect it urges that the 1998 amendments had no legal effect. We disagree. "We will not presume the legislature engaged in a useless act." *Id.*

 Assuming the amendment served some purpose, we must next ask what liability the 1998 amendments did limit. We can not perceive, and the Fund does not suggest, any other than liability for permanent benefits, total or partial. In fact, we believe that *Ristau* answered the question avoided in footnote four in *Hillyard* of how 287.220.9 and 287.250.8 are to be read together. *Ristau,* 130 S.W.3d at 606. Because of our interpretation we do not need to consider the Fund's additional argument (circular in any event) that "wage loss benefits" are only temporary total benefits because the Fund is liable only for temporary total payments.

We hold that for injuries sustained after August 28, 1993, but before August 28, 1996, the Second Injury Fund is responsible, up to the statutory maximum, for permanent total disability benefits represented by the loss of wages from Mr. Cox's second employment.

In its reply brief, the Fund raises for the first time an additional ground of error claiming that it cannot be held responsible to pay interest on the award against it. Points raised in appellant's reply brief, but not the appellant's original brief, will not

be considered. *Application of Gilbert,* 563 S.W.2d 768, 771 (Mo. banc 1978).

The Commission's award is affirmed.

PAUL M. SPINDEN, Presiding Judge, and VICTOR C. HOWARD, Judge, concur.