**Randy FRAZIER, Appellant,**

v.

**TREASURER OF MISSOURI AS CUSTODIAN OF SECOND INJURY FUND, Respondent.**

No. 63949.

Missouri Court of Appeals, Eastern District, Division One.

Nov. 23, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 29, 1993.

Application to Transfer Denied Feb. 22, 1994.

Mogab & Hughes, Thomas J. Gregory, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Maria W. Campbell, Asst. Atty. Gen., Jefferson City, for respondent.

CRIST, Judge.

Randy Frazier (Claimant) appeals from the decision of the Labor and Industrial Relations Commission (Commission) denying him benefits from the Second Injury Fund for permanent total disability. We affirm in part and reverse in part.

On June 19, 1987, Claimant was employed by the Missouri Department of Corrections as a corrections officer. On that date, Claimant injured his right knee while performing training exercises.

Claimant filed a claim for workers' compensation benefits against both his employer and the Second Injury Fund. Claimant received temporary total disability from his employer totalling $5,413.64. His employer also paid medical bills totalling $13,566.05. Claimant then settled his primary claim against his employer for $11,909.96 based on a 47½ percent permanent partial disability rating to his right knee.

Claimant's claim against the Second Injury Fund referred to prior injuries to his left knee, back and heart. At the hearing on his claim against the Second Injury Fund, evidence revealed Claimant had previously injured his back while working for Dresser Industries in 1970. Claimant received a 25 percent permanent partial disability settlement for that injury. Claimant also injured his left knee while working for Laclede Cab Company on May 11, 1985. As a result of that injury, Claimant received a workers' compensation settlement based on a 30 percent permanent partial disability of his left knee. He also received a settlement from the Second Injury Fund based on a combination of the left knee disability and his pre-existing 25 percent disability to his lower back. Claimant also testified he had a heart catherization in 1975. He had no additional problems with his heart until June of 1990.

After the primary injury on June 29, 1987, Claimant received various medical treatments. In September of 1987 and May of 1988, he had arthroscopic surgery on his right knee due to the primary injury. In July 1989 and September 1989, he received knee replacements for both of his knees. Following the knee replacements, Claimant testified both of his knees and his back have gotten progressively worse until he was forced to quit working in April of 1991. He is not currently under medical care. He takes aspirin and Tylenol to deal with pain. He testified his left knee hurts worse than his right one.

Claimant's evidence consisted of the medical reports of Alex Shreim, M.D., and Samuel Bernstein, Ph.D. Dr. Shreim evaluated Claimant in April of 1991. He found Claimant had a 60 percent permanent partial disability to his right knee due to the primary injury. He further stated Claimant had pre-existing permanent partial disabilities of 25 percent to his lower back, 30 percent to his left knee, 10 percent due to chronic obesity, and 10 percent for his heart condition. He concluded Claimant was totally and permanently disabled, unable to compete in the open labor market. Dr. Bernstein examined Claimant on May 19, 1992, and concluded Claimant was unemployable in the labor market.

The Second Injury Fund offered the medical report of Raymond Ritter, M.D. Dr. Ritter examined Claimant on July 12, 1991. He found Claimant had a 40 percent impairment of his right knee, a 25 percent impairment of his left knee, and a 15 percent impairment of his body as a whole due to his prior back injury. However, he concluded the impairment was not greater than the simple sum of the impairments of the specific parts.

The Second Injury Fund further offered the report of James M. England, a rehabilitation counselor. England's report concluded Claimant had "transferable skills from his police and correctional work which would make him an ideal candidate for more sedentary positions within both the government sector, as well as the private security field."

The Commission found Claimant was not permanently and totally disabled. However, it did find Claimant had pre-existing disabilities which were industrially disabling. It held the Second Injury Fund liable for per-

manent partial disability. The Commission found Claimant's pre-existing disability totalled 148 weeks (100 weeks for 25 percent back injury and 48 weeks for 30 percent disability to left knee). The June 29, 1987, accident resulted in a 47½ percent, or 76 weeks, disability to Claimant's right knee. It then concluded the sum of pre-existing disabilities and the primary injury was 224 weeks, resulting in an excess disability of 20 percent or 44.8 weeks. However, the Commission gave the Second Injury Fund credit for its prior payment in 1987 of 22.2 weeks for the combination of lower back and left knee. It then ordered the Second Injury Fund liable for 22.6 weeks for a total of $3,541.65.

■ On appeal to this court, Claimant first argues the Commission erred in denying benefits for permanent total disability because: (1) it should have considered the deterioration of Claimant's pre-existing disability in assessing whether he was totally disabled; and (2) even without the post-injury progression, substantial and competent evidence exists to show Claimant was totally disabled.

Appellate review of the Commission's decision is limited to questions of law, and we may reverse only upon the following grounds:

(1) That the Commission acted without or in excess of its powers;

(2) That the award was procured by fraud;

(3) That the facts found by the Commission do not support the award;

(4) That there was not sufficient competent evidence in the record to warrant the making of the award.

§ 287.495, RSMo Supp.1992. We further review all evidence in the light most favorable to the Commission's decision. *Carron v. Ste. Genevieve School Dist.*, 800 S.W.2d 64, 67[1] (Mo.App.1990). We cannot substitute our judgment for that of the Commission even if we would make a different conclusion. *Id.* at [2].

The Commission made the following finding:

In conclusion, both the testimony of the employee and the medical evidence indi-

cate that many of the employee's present complaints are not related to pre-existing industrially disabling problems. Although the employee's prior back condition and left knee injury did affect his ability to work to some degree, it appears the left leg and the low back conditions gradually became worse and were further aggravated by the employee's subsequent medical treatment in 1989.

■ In determining the liability of the Second Injury Fund, the Commission should consider "the degree or percentage of employee's disability that is attributable to all injuries or conditions *existing at the time the last injury was sustained....*" § 287.220.1, RSMo Supp.1992 (emphasis added). This language implies the Second Injury Fund is not liable for any progression of Claimant's pre-existing disabilities not caused by Claimant's last injury. *Lawrence v. Joplin R–VIII School Dist.*, 834 S.W.2d 789, 793[4] (Mo.App. 1992); *See also, Wilhite v. Hurd*, 411 S.W.2d 72, 76–77[1] (Mo.1967) (the worsening of claimant's vision in his left eye after he lost the vision in his right eye in work-related accident is not chargeable to the Second Injury Fund).

We find no error in the Commission's finding. Claimant offered medical evidence the primary injury and the pre-existing disabilities combined so that employee was totally and permanently disabled. The Commission was free to accept or reject this medical evidence. It chose to rely on Claimant's testimony and the Second Injury Fund's medical evidence which showed Claimant was not totally and permanently disabled. In addition, Claimant offered no evidence the exacerbation of his problems with his back and left knee was related to the injury to his right knee.

■ However, Claimant also contends he proved permanent total disability even without considering the unrelated worsening of his pre-existing disabilities after the primary injury.

■ Total disability is defined as the "inability to return to any employment and not merely mean inability to return to the employment in which the employee was engaged

at the time of the accident." § 287.020.7, RSMo 1986. In determining permanent total disability, the test is whether Claimant is competent to compete in the open labor market by measuring his prospects for returning to employment. *Carron,* 800 S.W.2d at 67[3]. The main question is whether any employer in the ordinary course of business could reasonably be expected to employ Claimant in his physical condition. *Id.; Fischer v. Archdiocese of St. Louis,* 793 S.W.2d 195, 199[15] (Mo.App.1990).

The Commission did not err in finding Claimant failed to prove permanent total disability. Following the primary injury on June 29, 1987, after 21 weeks of temporary total disability, Claimant returned to his position at the Department of Corrections on light duty until May of 1988 when he was terminated. He then obtained a job as jail administrator at the Washington County Sheriff's Department where his duties included transporting prisoners, writing policies, processing and handling prisoners, and general court duty. Claimant worked there for almost three years until April of 1991. This evidence supports the Commission's finding that Claimant was not totally disabled as a result of a combination of his pre-existing disabilities and his primary injury to his right knee. In addition, immediately prior to Claimant's primary injury, Claimant was able to pass the physical examination requirements to become a corrections officer even though he had prior disability to his left knee and lower back. Further, the Second Injury Fund's medical evidence belied Claimant's contention of total disability. Point denied.

■ In Point II, Claimant alleges error in allowing the Second Injury Fund to take a credit for a prior settlement with Claimant. In 1985, Claimant received workers' compensation benefits for the injury to his left knee. He also settled with the Second Injury Fund for 22.2 weeks for the combination of the primary injury to his left knee and the pre-existing disability to his lower back. The Commission credited the 22.2 weeks to Claimant's current award of 44.8 weeks, reducing Claimant's recovery to 22.6 weeks or $3,541.65. In arriving at that decision, it concluded:

Although this is not addressed in the statute or in any known cases, if carried to its logical conclusion, it is obvious that the Second Injury Fund should not be required to pay over and over again for the same combinations. This conclusion is consistent with the established practice of giving employers credit for prior payments of permanent partial disability when an employee reinjures the same part of his body. Thus, it appears the Second Injury Fund should have the same right to claim a credit for a prior settlement.

■ We find the Commission erred in allowing credit for the liability of the Second Injury Fund. Section 287.220 provides the Second Injury Fund is liable for the difference between the combined effect of the primary injury and the pre-existing disabilities and the simple sum of Claimant's individual disabilities. It states:

> After the compensation liability of the employer for the last injury, considered alone, has been determined ... the degree or percentage of employee's disability that is attributable to all injuries or conditions existing at the time the last injury was sustained shall then be determined ... and the degree or percentage of disability which existed prior to the last injury plus the disability resulting from the last injury ... shall be deducted from the combined disability, and compensation for the balance, if any, shall be paid out of a special fund known as the second injury fund....

§ 287.220.1. Nowhere in § 287.220 or any other provision of the Workers' Compensation Act does the legislature provide for an offset for prior settlement by the Second Injury Fund.

■ Workers' compensation law is entirely a creature of statute. Therefore, we are bound by the general rules of statutory construction in interpreting the workers' compensation law. In interpreting it, we must ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms. *Morton v. Brenner,* 842 S.W.2d 538, 541[6] (Mo. banc 1992). Clearly, the legislature could have included such a provision in the second injury statute. It did so in other instances. For example, in

§ 287.150.4, RSMo Supp.1992, the legislature provided a right of subrogation to the Second Injury Fund for employee's possible tort claims against any third party. Section 284.-287.3 also provides liability exists only for the longest and largest paying disability when an employee receives concurrent temporary disabilities. The legislature's failure to include an offset provision for prior second injury fund payments leads us to the conclusion such an offset was not intended.

Therefore, we reverse that portion of the Commission's decision allowing the offset and direct the Second Injury Fund to pay Claimant the full amount of 44.8 weeks at $156.71 per week for a total of $7,020.60. The judgment is affirmed in all other respects.

CRANDALL, P.J., and REINHARD, J., concur.