Danny **SIMPSON**, Employee–Appellant,

v.

Dale E. **SAUNCHEGROW CONSTRUCTION** d/b/a DES Construction, Employer–Respondent–Cross Appellant,

**Columbia National Insurance Company,** Insurer–Respondent,

and

**Missouri State Treasurer, as Custodian of the Second Injury Fund, Additional Party–Cross Appellant.**

Nos. 21802, 21823 and 21836.

Missouri Court of Appeals, Southern District, Division Two.

March 30, 1998.

Motion for Rehearing or Transfer Denied April 21, 1998.

Application for Transfer Denied May 26, 1998.

---

William C. Love, Harrison, Tucker & Hyde, Springfield, for Danny Simpson.

Jerry A. Harmison, Jr., Daniel R. Wichmer, Miller & Sanford, Springfield, for Dale E. Saunchegrow Construction, d/b/a DES Corp.

Raymond E. Whiteaker, Whiteaker & Wilson, Springfield, for Columbia National Insurance Company.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jefferson City, Cara Lee Harris, Asst. Atty. Gen., Springfield, for Second Injury Fund, State of Missouri.

Before PARRISH, P.J., and SHRUM and BARNEY, JJ.

PER CURIAM.

In respective appeals 21802, 21823 and 21836, Appellants Danny Simpson (Claimant), Dale E. Saunchegrow, d/b/a DES Construction (Employer), and Treasurer of the State of Missouri, as custodian of the Second Injury Fund (Custodian), appeal the final award of the Labor and Industrial Relations Commission (Commission) entered in connection with a claim for compensation filed by Claimant.[1]

Each respective Appellant maintains that the Commission erred when it found that Columbia National Insurance Company (Insurer) had effectively canceled a workers' compensation insurance policy (the policy), previously issued to Employer prior to Claimant's work-related injuries, when it sent Employer a certified letter canceling its policy. Appellants argue that Insurer failed to comply with the provisions of section 287.090.3 which they contend mandated that Insurer file a Form 75 with the Division of Workers' Compensation (the Division) as a prerequisite to the cancellation of its workers' compensation policy previously issued to Employer.[2] Also, in its separate appeal, Employer raises an additional point of Commission error by its determination that Employer was not entitled to an award of $3,000.00 against Insurer for his costs incurred in defending the claim.

**I.**

In July 1992, Employer purchased workers' compensation insurance from Respondent, Columbia National Insurance Company (Insurer), through Kenneth Bassett, an independent insurance agent. On September 22, 1992, Insurer issued a workers' compensation insurance policy (the policy) to Employer, effective as of July 23, 1992, which was to expire on July 23, 1993.

An endorsement attached to the policy provided, *inter alia*, that the insurer could cancel the policy by "mail or deliver to you by certified mail, not less than thirty days advance written notice stating when the cancellation is [to] take effect."

On September 28, 1992, Insurer filed with the Division a Form 75, dated September 23, 1992, wherein Insurer certified that "workers' compensation of [Employer] has been ... issued."[3]

Mr. Bassett subsequently received from Insurer, by certified mail, a letter dated September 29, 1992, stating that Insurer was canceling Employer's policy effective November 28, 1992. According to the letter, Insurer determined that Employer had an unde-

---

1. In the interest of judicial economy, we have consolidated all respective appeals herein.

2. All statutory references are to RSMo Cum. Supp.1992, unless otherwise indicated.

3. Form 75 (also known as "WC–75" in the regulations) has an area for the insurer to certify whether the insurer has issued, renewed, or canceled an employer's policy of workers' compensation insurance. The instant form identified the policy's effective date as July 23, 1992, and its expiration date as July 23, 1993. *See* 8 C.S.R. 50–2.020.

sirable credit rating per recent credit report. Mr. Bassett discussed the credit report problem with Employer but this problem was not resolved. On October 8, 1992, Insurer issued its check to Employer in the amount of $712.28 for the unused premiums on the policy in question. Employer admitted cashing and depositing the proceeds into his bank account. Insurer ultimately filed another WC–75 with the Division on April 19, 1995, showing that the policy in question had been canceled, effective November 28, 1992.

During the hearing before the Administrative Law Judge (ALJ) the parties stipulated that on January 20, 1993, Claimant sustained an injury arising from an accident while working for Employer, who was operating a construction business subject to the Missouri Workers' Compensation law.[4]

In her findings of facts and conclusions of law, the ALJ determined that Insurer's policy of insurance was in force at the date of Claimant's work-related injuries. She determined that Insurer had failed to comply with the prerequisites of filing a Form 75 with the Division in order to perfect its right to cancel under section 287.090.3, noting that insurer had belatedly filed its notice of cancellation on April 19, 1995, more than two years after Claimant incurred his work-related injuries. Accordingly, the ALJ ordered the Insurer to pay Claimant's (a) medical expenses of $33,-981.45; (b) mileage of $1,219.00; (c) temporary total disability for 59 4/7 weeks at the weekly rate of $266.67 for a total of $15,866.87; (d) permanent partial disability of 60% of the left upper extremity in the amount of $32,796.91; (e) future medical treatment in an undetermined amount; and (f) disfigurement based on 20 weeks' compensation.

Additionally, the ALJ ordered that Insurer pay Employer $3,000.00 for costs he incurred in defending his claim, and determined that the Second Injury Fund had no liability in the case.

On appeal by Insurer to the Commission, the Commission reversed the ALJ's award which determined that the Insurer's policy was in effect at the time of Claimant's injuries. It decided that section 287.090.3 lacked a provision specifically making cancellation of a workers' compensation insurance policy contingent on the filing of a Form 75, and also found that the statute did not establish a specific time frame associated with the filing of that form. It, therefore, concluded that the filing of a Form 75 was of ministerial[5] importance to the Division, and that there was no basis for concluding that Insurer must have filed a Form 75 to have effectively canceled its workers' compensation insurance policy.

The Commission then found that the policy was effectively canceled on November 28, 1992, prior to Claimant's work-related accident. Accordingly, it held that the issue of Insurer's payment of future medical expenses was moot. The Commission reversed the award of $3,000.00 in favor of Employer and against Insurer to reimburse Employer for his costs in defending the claim. The Commission also determined that Employer remained liable for the payment of the award of benefits to Employee as set out by the ALJ's award, which was otherwise affirmed in its totality, and ordered the Second Injury Fund to be "liable for the payment of Claimant's past and future medical expenses not otherwise paid by Employer."

## II.

In a workers' compensation case an appellate court reviews the entire record,

---

4. The parties stipulated that the nature and extent of disability incurred by Employee is 60% of the left upper extremity, sufficient to allow a compensation rate of $266.67 for temporary total disability benefits and $235.61 for permanent partial disability benefits. It was further stipulated that Employee was temporarily and totally disabled for 59 4/7 weeks and was therefore entitled to $15,866.87, and that his incurred medical bills amounted to $33,981.45. Employee's

travel expenses related to physician visits amounted to $1,219.00.

5. The term ministerial, as in ministerial act, is defined, as "[t]hat which involves obedience to instructions, but demands no special discretion, judgment, or skill." BLACK'S LAW DICTIONARY 996 (6TH ED.1990).

including legitimate inferences to be drawn therefrom, in the light most favorable to the award of the Commission. *Chambers v. SDX, Inc.,* 948 S.W.2d 448, 450 (Mo.App. 1997). The appellate court may modify, reverse, remand for rehearing, or set aside an award or decision of the Commission only if the Commission's actions were unauthorized by law, in excess of its authority, fraudulent, unsupported by the facts as found by the Commission or unsupported by competent evidence of the whole record. *Id.* As to questions of law, our review of the Commission's decision is *de novo. Davis v. Research Medical Center,* 903 S.W.2d 557, 560 (Mo. App.1995).

■ "Workers' compensation law is entirely a creature of statute. Therefore, we are bound by the general rules of statutory construction in interpreting the workers' compensation law." *Frazier v. Treasurer of Missouri as Custodian of Second Injury Fund,* 869 S.W.2d 152, 156 (Mo.App.1993). "In interpreting it, we must ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms." *Id.* We are also required to "give effect to that intent if possible...." *Campbell v. Labor & Indus. Relations Comm'n,* 907 S.W.2d 246, 249 (Mo.App.1995).

Section 287.090.3 provides as follows:

Any insurance company authorized to write insurance under the provisions of this chapter in this state shall file with the division a memorandum on a form prescribed by the division of any workers' compensation policy issued to any employer and of any renewal or cancellation thereof.

Claimant argues that sound policy reasons dictate that the foregoing statute be construed as requiring an insurance company to give notice to the Division as a prerequisite to the cancellation of a workers' compensation policy of insurance. He maintains that case law has established that such cancellation provisions be strictly construed against Insurer. He also argues that insurance companies providing workers' compensation insurance in Missouri are pervasively regulated with a view toward protection of the employee. Claimant maintains that the notice requirement of section 287.090.3 serves the purposes of first verifying that an employer has complied with the Missouri Workers' Compensation Law (Act) by obtaining insurance, *see* § 287.280; and, secondly, assists in the effectual administration of claims, serving as a safeguard to employees with respect to their employers' compliance with the Act.

Employer argues that in cancelling a policy the statute contains the words "shall file," in connection with the filing of a form prescribed by the Division. It maintains that the plain meaning of the statute requires an insurer to file a Form 75 with the Division prior to effectuating the cancellation of a policy. Employer argues that this Court "need look no further than the word 'shall' ..." in determining whether the section imposes a mandatory duty on Insurer to timely file a notice of cancellation prior to its being considered an effective cancellation. In like manner, the Custodian joins with the Claimant in arguing that the cancellation provisions of a workers' compensation policy are to be strictly construed. *See* ARTHUR LARSON, LARSON'S WORKERS' COMPENSATION LAW § 92.31 (1997) (in the compensation process ... requirements for cancellation of insurance are generally exacting, and are strictly construed and applied). The Custodian also joins with Claimant in arguing that when notice to a government agency is required by statute to effect the cancellation of a policy, there is no cancellation without the required notice being given, regardless of contrary insurance policy provisions. *See* LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE 3D § 31:19 (1995).

We determine that the Commission is correct in its analysis and conclusion that section 287.090.3 does not require that Insurer have filed a Form 75 prerequisitely to cancelling the policy herein.

■ In our reading of the plain meaning of section 287.090.3, we observe the absence

of any express words or phrase stating that the cancellation of a workers' compensation insurance policy is *contingent* on the filing of a Form 75. Clearly, the legislature could have included such an important provision but did not do so. The legislature's failure to include such a contingency provision leads us to the conclusion that such a contingency was never intended. In our interpretation of section 287.090.3, we find the court's analysis in *Frazier*, 869 S.W.2d 152, to be instructive.

In *Frazier*, the Commission allowed the Second Injury Fund to offset a claimant's second award of 44.8 weeks against the Second Injury Fund by 22.2 weeks previously awarded claimant against the same entity. The court determined that the Commission had erred in interpreting section 287.220.1 as authorizing an offset for a prior settlement by the Second Injury Fund. The Court noted that "[n]owhere in § 287.220 or any other provision of the Workers' Compensation Act does the legislature provide for an offset for prior settlement by the Second Injury Fund." *Id.* at 156. The court stated that it had a duty of interpreting the intent of the legislature by considering the plain and ordinary meaning of the terms, and observed that "[c]learly, the legislature could have included such a provision [for an offset] in the second injury statute." *Id.* at 156. The court concluded by noting that "[t]he legislature's failure to include an offset provision for prior second injury fund payments leads

us to the conclusion such an offset was not intended." *Id.* at 157.

■ Neither is there a provision in the statute establishing a time frame for the filing of Form 75. Yet, in the same section, sub-section 2 expressly provides for a time limitation within which an exempt employer, who has opted into the coverage of the Act, may withdraw from that coverage.[6] Differences in statutes should be interpreted in context, particularly where the provisions were passed simultaneously or appear sequentially. *Campbell*, 907 S.W.2d at 250 (citing *Cascio v. Beam*, 594 S.W.2d 942, 946 (Mo. banc 1980)).

Claimant has referred this Court to numerous cases in foreign jurisdictions wherein various courts have interpreted their respective laws relating to the statutory requirement that as a prerequisite to cancellation of a workers' compensation policy of insurance, an insurance company must file notice of cancellation with a labor board or commission similar to that of Missouri. However, except for the possible exception of one case,[7] these cases do not aid Claimant's case. That is because Claimant's cited cases are uniformly distinguished by one important fact. Each contains references to *express time frames* associated with the required filing of a notice of cancellation, unlike the Missouri statute in question.[8]

We also note the incongruity resulting in applying Appellants' rationale to interpreting

---

6. Section 287.090.2, in pertinent part, provides that:

   Any employer electing to become liable under this chapter may withdraw his election by filing with the division a notice that he desires to withdraw his election, which withdrawal shall take effect thirty days after the date of the filing, or at such later date as may be specified in the notice of withdrawal.

7. *See Karstens v. Wheeler Millwork, Cab. & Supply Co.*, 614 S.W.2d 37, 41–2 (Tenn.1981).

8. *See Travelers Ins. Co. v. Duvall*, 884 S.W.2d 665, 666 (Ky.1994) (cancellation of any policy of insurance issued under the provisions of this chapter shall take effect no greater than ten (10) days prior to the receipt of such cancellation by the workers' compensation board, Ky.Rev.Stat. Ann. § 342.340(2)); *St. Paul Fire & Marine v.*

*Southwestern Imp., Inc.*, 19 Ark.App. 239, 719 S.W.2d 708, 709 (1986) (no contract or policy of insurance issued by a company under this Act shall be cancelled prior to the date specified in such contract or policy for its expiration until at least thirty (30) days have elapsed after a notice of cancellation has been sent to the Commission, Ark.Code Ann. § 81–1338(b)); *American Mut. Fire Ins. Co. v. Barlow*, 4 Va.App. 352, 358 S.E.2d 184, 185 n. 1 (1987) (no policy of insurance hereafter issued under the provisions of this Act shall be cancelled by the insurer issuing such policy except on 30 days' notice to the employer and the Industrial Commission, Va.Code Ann. § 65.1–105); *Hartford Acc. & Indem. v. Fidelity & Guar. Ins. Underwriters, Inc.*, 223 Va. 641, 292 S.E.2d 327, 327–28 (1992) (interpreting Va.Code Ann. § 65.1–105); *Pennsylvania Mfrs. Ass'n Ins. v. Waldron*, 16 Va.App. 991, 434 S.E.2d 690, 692 (1993) (interpreting Va.Code Ann. § 65.2–804(B) as providing a thirty days' notice requirement to

the "renewal" provision of section 287.090.3 in interpreting the "cancellation" provision.

Presently the "renewal" of policy coverage takes effect in accordance with the terms of a policy. However, under Appellants' rationale, a "renewal" would take effect only upon an insurance company's filing a notice of renewal. The insurance company alone could determine when insurance coverage would become effective simply by withholding notification to the Division.[9] "It is presumed that in the enactment of laws the legislature does not intend to enact absurd laws." *David Ranken, Jr. Tech. Inst. v. Boykins,* 816 S.W.2d 189, 192 (Mo. banc 1991).

Lastly, in oral arguments Appellants contended that in the absence of a specific statutory time frame within which an insurance company is required to file notice with the Division, of either renewal or cancellation of a policy, this Court should impose a "reasonable time" standard.

The fallacy of this argument, however, is that this procedure would provide for a largely subjective test as to what would constitute a "reasonable time" within which an insurance company would be required to file notice of cancellation or renewal with the Division. Review by the courts of what may constitute a "reasonable time," would vary considerably, e.g., one, five, ten, thirty, fifty, sixty or more days, depending upon the particular facts and circumstances of each claim. We determine that this would make for a decidedly cumbersome procedure, one which simply does not comport with what we perceive to be the intent of the legislature from our plain reading of the statute.

While we recognize that in our review a liberal construction of the Act in favor of claimants is required, *Chambers,* 948 S.W.2d at 450, this principle may not be extended so far as to negate what we believe to be the intent of the legislature. *Staples v. A.P. Green Fire Brick Company,* 307 S.W.2d 457, 463 (Mo. banc 1957). Section 287.090.3 contains no words of contingency or of time limitations and we are not at liberty to write into the Act "under the guise of construction, provisions which the legislature did not see fit to insert." *State ex rel. Mills v. Allen,* 344 Mo. 743, 128 S.W.2d 1040, 1046 (1939).

The wisdom of not using words of contingency nor requiring a specific time frame for notification of cancellation to the Division in the statute in question is a matter for the legislature and not for this Court. *See Newlin v. Cordray Ford Tractor,* 799 S.W.2d 205, 208 (Mo.App.1990).

We conclude that section 287.090.3 is ministerial in nature and does not require an insurer to file (a Form 75) notice of cancellation with the Division prior to effectuating the cancellation of a workers' compensation insurance policy. Since Insurer complied with its own policy provisions in canceling its policy with Employer, effective November 28, 1992, and Claimant's work-related injuries occurred subsequent to this date, Employer had no coverage as to this claim. Claimant, Employer and Custodian's respective Point One are denied.

In Employer's Point Two, it maintains that the Commission erred in reversing the ALJ's award of $3,000.00 in attorney fees payable by Insurer to Employer in connection with defending the claim herein.

employer and the commission); *Vance v. Twin River Homes, Inc.,* 641 So.2d 1176, 1181 (Miss. 1994); *Cooper v. Marathon Freight Lines, Inc.,* 635 So.2d 855, 858 (Miss.1994) (MISS.CODE ANN. § 71-3-77 (1989), mandated that no cancellation shall be effective until thirty (30) days after service of such notice); *Travelers Ins. Co. v. Nettles,* 528 So.2d 1291, 1291 (Fla.App.1988) (disallowing the expiration or cancellation of a workers' compensation insurance policy until at least 30 days have elapsed after a notice of cancellation has been sent to the division and to the employer, § 440.42(2), FLA. STAT. ANN. § 440.42(2)

(1983)); *Bright v. T. & W. Suffolk, Inc.,* 268 N.J.Super. 220, 633 A.2d 116, 118 (1993) (analyzing N.J. STAT. ANN. § 34:15–81, holding no such policy shall be deemed canceled until at least ten days' notice in writing of the election to terminate is given to the other party thereto).

9. We do not speculate on how many policies are presently in existence where insurance companies have not given notice of renewal to the Division.

Employer argues that Insurer did not give timely notice of cancellation of the policy to the Division, in accordance with the provisions of section 287.090.3. Therefore, it maintains that the policy was still in force and that Insurer was obligated under the provisions of section 287.310.6 to defend all claims arising during the policy period. We disagree.

Section 287.310.6 provides that "[a]n insurer shall service and, if necessary, defend all claims that arise during the policy period, including those claims payable in whole or in part from the deductible amount." However, the "law of contracts applies to an insurance policy, and any claim or suit by either party must be based on the policy issued." *Gabriel v. Shelter Mut. Ins. Co.*, 897 S.W.2d 119, 120 (Mo.App.1995). In our review and analysis of section 287.090.3, *supra*, we have previously determined that Insurer duly canceled its policy of insurance with Employer, per the terms of the policy, effective as of November 28, 1992, prior to Claimant incurring his work-related injuries. Since there was no policy in existence at the time of Claimant's work-related injuries, Insurer had no duty to defend the claim. "The duty of an insurer to defend is contractual, and if there is no contract to defend there is no duty to defend." *Crown Center Redev. Corp. v. Occidental Fire & Cas. Co.*, 716 S.W.2d 348, 357 (Mo.App.1986); § 287.310.6; *see also McCoy v. Guarantee Trust Life Ins. Co.*, 240 S.W.2d 172, 174–76 (Mo.App.1951). Employer's Point Two is denied.

The final award of the Commission is affirmed.