Ralph HONER, Employee/Appellant,

v.

TREASURER OF the STATE of Missouri, as Custodian of the Second Injury Fund, Respondent.

No. ED 87025.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 23, 2006.

Ray B. Marglous, Robert Scott Merlin—co-counsel, Clayton, MO, for appellant.

Michael Thomas Finneran, Attorney General's Office, St. Louis, MO, for respondent.

SHERRI B. SULLIVAN, J.

*Introduction*

Ralph Honer (Employee) appeals from a Final Award Allowing Compensation (Final Award) of the Labor and Industrial Relations Commission (the Commission) modifying an Award and Decision (Decision) of the Administrative Law Judge (ALJ) with the Division of Workers' Compensation (the Division). Employee argues that the Commission erred in applying Section 287.220.4[1] to the Second Injury Fund (the Fund).[2] We reverse and remand with instructions.

1. All statutory references are to RSMo 2000, unless otherwise indicated.

2. We note that another case, *Harris v. Treasurer of the State of Missouri*, ED87083, — S.W.3d —, 2006 WL 1388881, addressed this same issue and was heard and submitted on the same day as this case.

*Factual and Procedural Background*

Employee filed with the Division two claims for compensation alleging work-related injuries while employed by Lange–Stegman Company (Employer). The first claim (Claim One) alleged that on or about August 23, 2001, an accident occurred that resulted in Employee sustaining low back and left leg injuries. The second claim (Claim Two) alleged that on or about March 15, 2002, Employee suffered an occupational disease resulting in bilateral carpal tunnel syndrome.

On February 24, 2004, Employee settled both claims with Employer and its insurer, Missouri Merchants & MFG Association (Insurer). The ALJ approved both settlements. The weekly compensation rate for both claims was $513.19 for permanent total disability (PTD) and $329.42 for permanent partial disability (PPD). Employee and Employer/Insurer settled Claim One for a lump sum payment based upon 17.23% PPD, or 68.92 weeks,[3] of the body as a whole, referable to the low back.[4] Employee and Employer/Insurer settled Claim Two for a lump sum payment based upon 15% PPD, or 26.25 weeks (52.5 weeks total), of each hand at the wrist.

Both claims proceeded to trial against the Fund. The claims were consolidated for hearing, following which the ALJ entered the Decision. The ALJ concluded that Employee's preexisting illnesses, including morbid obesity, diabetes, glaucoma, and hypertension, resulted in 20% PPD, or 80 weeks, of the body as a whole. Regarding Claim One, the ALJ deter-

3. We note that the settlement document states 60.924 weeks, but the Commission, the ALJ, and the parties in their briefs state 68.92 weeks so we adhere to that figure.

4. Employer also paid Employee $3332.21 in temporary disability benefits under Claim One.

mined that Employee's preexisting illnesses combined synergistically with his primary low back injuries and constituted a hindrance or obstacle to his employment such that the Fund was liable for PPD benefits for 22.338 weeks at a rate of $329.42 per week, or a total award of $7,358.58. Regarding Claim Two, the ALJ found that Employee's primary wrist injuries combined with his preexisting low back injuries, glaucoma, morbid obesity and diabetes, rendered Employee permanently and totally disabled as of March 15, 2002. Thus, the ALJ found the Fund liable for PTD benefits. Because Employee received PPD benefits totaling 52.5 weeks from Employer as a result of the primary wrist injuries under the settlement of Claim Two, the ALJ found the Fund liable for PTD benefits in the amount of $183.77 per week, the difference between the weekly compensation rate for PPD and PTD, from March 15, 2002 through March 15, 2003, and thereafter in the amount of $513.19 per week for Employee's lifetime.

Subsequently, the Fund filed an Application for Review of the Decision with the Commission, with the sole issue being the rights, if any, of the Fund under Section 287.220.4, as relevant to Claim Two. The Fund argued that according to the provisions of Section 287.220.4, PTD payments from the Fund to Employee should not commence until such time as both periods of deemed PPD payments from Employer to Employee have expired, calculated as if the two periods (68.92 and 52.5 weeks, respectively) ran consecutively from the end of Employee's period of temporary total disability from his earlier accident (November 2001).

After oral arguments, the Commission entered its Final Award, modifying the Decision and adopting the Decision, including its findings and conclusions, to the extent that it was not inconsistent with the Final Award. The Commission concluded that Section 287.220.4 applied to determine the timing of the compensation payments to Employee.[5] The Final Award set out the following benefit payments timeline for the Fund to pay to Employee: $183.77 per week for the period March 15, 2002 through February 24, 2003; $513.19 per week for the period February 25, 2003 through July 31, 2003; $183.77 per week for the period August 1, 2003 through July 31, 2004; and $513.19 per week beginning August 1, 2004 and continuing for Employee's lifetime or until modified by law.

One of the members of the Commission filed a Dissenting Opinion, indicating that he would affirm the benefit payments timeline determined by the ALJ because Section 287.220.4 does not apply to Employee's injuries. Employee appeals from the Final Award entered by the Commission.

### Standard of Review

We will affirm the final award of the Commission unless: (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award. Section 287.495. In the absence of fraud, the Commission's findings of fact made within its powers are conclusive and binding, and

---

**5.** After applying Section 287.220, the Commission determined the following timeline:

[E]mployer's [PPD] period for the first injury ran from November 1, 2001, for 68.92 weeks until February 24, 2003. Beginning on February 25, 2003, the [Fund] [PPD] period for the first injury ran for 22.33 weeks until July 31, 2003. Beginning on August 1, 2003, [E]mployer's [PPD] period for the second injury began to run and extended for 52 weeks until July 31, 2004.

we confine our review to questions of law. *Id.*

When the Commission affirms or adopts the findings of the ALJ, the decision and findings of the ALJ are reviewed as adopted by the Commission. *Moriarty v. Treasurer of State of Missouri,* 141 S.W.3d 69, 72 (Mo.App. E.D.2004). However, we independently review questions of law for correctness without deference to the Commission's final award. *Id.*

### Discussion

In his point on appeal, Employee argues that the Commission erred when if failed to follow the clear, plain, and unambiguous language of Section 287.220.1, thereby depriving Employee of the full value of his PTD award against the Fund in Claim Two, because the Commission's Final Award erroneously credited the Fund in Claim Two with the award against Employer and the Fund in Claim One.

Section 287.220.1 provides in relevant part:

> After the compensation liability of the employer for the last injury, considered alone, has been determined by an administrative law judge or the commission, the degree or percentage of employee's disability that is attributable to all injuries or conditions existing at the time the last injury was sustained shall then be determined by that administrative law judge or by the commission and the degree or percentage of disability which existed prior to the last injury plus the disability resulting from the last injury, if any, considered alone, shall be deducted from the combined disability, and compensation for the balance, if any, shall be paid out of a special fund known as the second injury fund, hereinafter provided for. If the previous disability or disabilities, whether from compensable injury or otherwise, and the last

> injury together result in total and permanent disability, ... the employer at the time of the last injury shall be liable only for the disability resulting from the last injury considered alone and of itself; except that if the compensation for which the employer at the time of the last injury is liable is less than the compensation provided in this chapter for permanent total disability, then in addition to the compensation for which the employer is liable and after the completion of payment of the compensation by the employer, the employee shall be paid the remainder of the compensation that would be due for permanent total disability under section 287.200 out of a special fund known as the 'Second Injury Fund'....

Section 287.220.4 provides:

> If more than one injury in the same employment causes concurrent and consecutive permanent partial disability, compensation payments for each subsequent disability shall not begin until the end of the compensation period of the prior disability.

Worker's compensation law is entirely statutory, and when interpreting the law, we ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and, if possible, give effect to that intent. *George v. City of St. Louis,* 162 S.W.3d 26, 30 (Mo.App. E.D. 2005). We liberally construe all provisions of the worker's compensation law to favor the employee. *Id.* The law favors a statutory interpretation that tends to avert an unreasonable result. *Edwards v. Hyundai Motor Am.,* 163 S.W.3d 494, 497 (Mo. App. E.D.2005).

We cannot conclude, as the Commission did, that Section 287.220.4 applies to determine the timing of compensation payments to Employee by the Fund. First, the general language of subsection four existed prior to the creation of the Fund in 1943.

*See* Section 3317(c) RSMo 1929.[6] Therefore, the precursor to Section 287.220.4 necessarily applied only to employers.

Second, the plain language of Section 287.220.4 does not provide for its application to the Fund, and therefore, as workers' compensation law is entirely a creature of statute, we cannot presume that the legislature intended such an application. *See Frazier v. Treasurer of Missouri as Custodian of Second Injury Fund*, 869 S.W.2d 152, 156–157 (Mo.App. E.D.1993) (concluding that Section 287.220 does not provide for an offset for prior settlement payments by the Fund and had the legislature intended such an offset, it would have included a relevant provision in the statute). By applying Section 287.220.4 to the Fund, the Commission essentially precludes payments by an employer and the Fund at the same time for multiple injuries, thereby extending an employee's timeline for payments and delaying the time at which the Fund is liable for full PTD payments. Nothing in the plain language of Section 287.220.1 or Section 287.220.4 prohibits the Fund from being obligated for PTD payments at the same time that an employer is obligated for PPD payments for a prior injury. Therefore, the timing of payments must be determined independently for each injury.

■ Further, the general purpose of Section 287.220 is to encourage the employment of individuals with disabilities by (1) partially relieving employers from their liability to employees for disabilities not specifically attributable to injury suffered while in their employment and (2) protecting employees by providing a fund from which employees are compensated for that portion, if any, of their disability above that attributable to their last injury. *Stewart v. Johnson*, 398 S.W.2d 850, 853 (Mo.1966). The application of subsection four to employers logically serves this general purpose. Specifically, the requirement of "more than one injury *in the same employment*" serves the purpose by spreading out one employer's liability over time, thereby encouraging continued employment of the disabled. However, the purpose is not served by allowing the Fund to receive such relief in its compensation payments. In fact, prolonging the Fund's compensation payments could lead to unreasonable results.[7] Also, applying subsection four to the Fund would not serve the purpose of the Fund to encourage the employment of individuals with preexisting disabilities because the application of subsection four occurs in the specific context of "the same employment," so the hiring context is not implicated.

**6.** This section provided:

> If more than one injury in the same employment causes concurrent and consecutive permanent disability, compensation payments for each subsequent disability shall not begin until the end of the compensation period of the prior disability.

**7.** One potentially unreasonable result would be where two different employees working for the same employer sustain the same successive injuries ultimately resulting in PTD. For example, Employee #1 sustains successive injuries over an extended period of time. Employee #1 would receive full compensation for PPD for each injury and for PTD. Employee #2 sustains successive injuries over a short period of time. Employee #2

would not receive full compensation for PPD for each injury and for PTD.

Another potentially unreasonable result would be where two different employees, one working for the same employer, one working for multiple employers, sustain the same successive injuries ultimately resulting in PTD. For example, Employee #1 sustains successive injuries over a short period of time with the same employer. Employee #2 sustains the same successive injuries over the same period of time as Employee #1, but with one of the injuries occurring with a different employer. Employee #1 would receive less than full compensation for PPD for each injury, while Employee #2 would receive full compensation for PPD for each injury.

Finally, in interpreting workers' compensation law, we resolve all doubts in favor of the employee. *Kowalski v. M–G Metals and Sales, Inc.*, 631 S.W.2d 919, 923 (Mo.App. S.D.1982). As noted in the dissenting opinion of the Commission, the benefit payments timeline set out in the Final Award results in a loss of benefits to Employee of over $20,000 as compared to the timeline determined by the ALJ. Therefore, our conclusion resolves any doubts regarding the application of Section 287.220.4 to the Fund in favor of Employee.

We note that in its Final Award, the Commission mentions that its conclusion results in Employee never receiving more than the statutory maximum weekly benefit for PTD. However, neither Section 287.220.1 nor Section 287.220.4 sets a weekly limit on benefits received by an employee for multiple injuries. While Section 287.220.1 defines weekly compensation for PPD and PTD by the Fund, the section does not set a limit on the total weekly payments an employee can receive.

Accordingly, we conclude that Section 287.220.4 does not apply to compensation payments by the Fund. Therefore, the Commission incorrectly interpreted and applied Section 287.220.4 to determine the timing of the compensation payments to Employee by the Fund.

### Conclusion

The Final Award of the Commission modifying the Decision of the ALJ is reversed and remanded with instructions to reinstate the Decision of the ALJ.

NANNETTE A. BAKER, P.J., and ROBERT G. DOWD, JR., concur.