David HARRIS, Appellant,

v.

TREASURER, State of Missouri, As Custodian of the Second Injury Fund, Respondent.

No. ED 87083.

Missouri Court of Appeals, Eastern District, Division Four.

May 23, 2006.

Dean L. Christianson, St. Louis, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Michael T. Finneran, Asst. Atty. General, St. Louis, MO, for Respondent.

ROBERT G. DOWD, JR., Judge.

David Harris (Claimant) appeals from the final award of the Labor and Industrial Relations Commission (Commission) finding that he was not entitled to full permanent total disability benefits from the Sec-

ond Injury Fund (Fund) from February 7, 2006 and continuing for the remainder of his life. Claimant sought recovery from Phillips Metals (Employer) and from the Fund for injuries sustained on or about June 28, 2002 while working as a crane operator. The Administrative Law Judge (ALJ) entered judgment in favor of Claimant finding Claimant permanently and totally disabled and finding that the Fund was responsible for payment of permanent total disability benefits. Employer subsequently paid its portion of the award. The Fund, however, appealed to the Commission, which modified the award. On appeal, Claimant argues the Commission erred in interpreting and applying Section 287.220.4, RSMo 2000,[1] and delaying the Fund's liability for full permanent total disability benefits until July 18, 2011. We reverse and remand.[2]

On June 28, 2002, while working for Employer as a crane operator, Claimant sustained a neck injury. Claimant filed a claim for workers' compensation benefits against both Employer and the Fund. The matter was heard on February 14, 2003 and on October 19, 2004. After the February 14, 2003 hearing, the ALJ issued a temporary award, which ordered Employer to provide Claimant with medical care and temporary disability benefits for the injuries sustained on June 28, 2002. Employer provided those benefits. This claim was heard along with two other workers' compensation claims which alleged work-related injuries on May 17, 2001, for a psychiatric condition, and August 31, 2001, for a deep vein thrombosis condition, while working for the same Employer. Claimant eventually reached a state of maximum medical improvement following the June 28, 2002 injury on October 31, 2003.[3] After the October 19, 2004 hearing, the ALJ issued a final award on all three claims finding Claimant to be permanently and totally disabled as a result of the combination of injuries.

For the May 17, 2001 injury, the ALJ awarded Claimant 60 weeks of permanent partial disability from Employer, based upon a finding that Claimant had sustained a 15 percent permanent partial disability to the body as a whole referable to a psychiatric condition. The ALJ did not award Claimant any benefits against the Fund on this claim. For the August 31, 2001 injury, the ALJ awarded Claimant 240 weeks of permanent partial disability from Employer based upon a finding that Claimant had sustained a 40 percent permanent partial disability to the body as a whole referable to deep vein thrombosis along with a 20 percent permanent partial disability to the body as a whole referable to a mood disorder. The ALJ awarded Claimant an additional 45 weeks of permanent partial disability against the Fund for the August 31, 2001 injury upon his finding that the combination of injuries from May and August 2001 resulted in additional permanent partial disability. For the June 28, 2002 injury, the ALJ awarded 120 weeks of permanent partial disability benefits from Employer, based upon his finding that Claimant had sustained a 30 percent permanent partial disability to the

1. Unless otherwise indicated, all further statutory references are to RSMo 2000.

2. We note that another case, *Honer v. Treasurer of the State of Missouri*, ED87025, 192 S.W.3d 526, 2006 WL 1390139, addressed this same issue and was heard and submitted on the same day as this case.

3. The point at which no further improvement is expected is referred to as the point of "maximum medical improvement." *Herring v. Yellow Freight System, Inc.*, 914 S.W.2d 816, 821 (Mo.App. W.D.1995)(overruled on other grounds in *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 227 (Mo. banc 2003)).

body as a whole referable to the June 28, 2002 primary injury to the neck.

In his decision issued on the June 28, 2002 claim, the ALJ also found Claimant had been rendered permanently and totally disabled due to the combination of the disabilities produced by his three injuries, and thus awarded Claimant permanent total disability benefits from the Fund. The ALJ found Claimant had reached the point of maximum medical improvement from the June 28, 2002 injury on October 21, 2003. The ALJ therefore awarded Claimant lifetime weekly permanent total disability benefits from the Fund retroactive to that date. The amount of Claimant's weekly benefit was reduced however, for the first 120 weeks after October 21, 2003 by the amount of permanent partial disability benefits Claimant received in the award against Employer referable to his June 28, 2002 neck injury. This resulted in weekly benefits of $80.08 from October 21, 2003 through February 7, 2006, and $409.50 thereafter for Claimant's lifetime.

The Fund appealed the ALJ's final award to the Commission. In its application for review, the Fund asserted that the period during which the weekly permanent total disability benefits payable to Claimant from the Fund were reduced should not be confined to the 120 week period represented by his award against Employer on the June 28, 2002 claim, but rather should include whatever remained, as of October 21, 2003, the date of maximum medical improvement and permanent total disability, of the weekly permanent partial disability benefits Claimant had received from the May and August 2001 claims calculated consecutively from May 17, 2001, the date of Claimant's first injury. The Fund argued that only upon expira-

tion of the weekly permanent partial disability benefits received from the May and August 2001 claims should the 120 weeks of permanent partial disability benefits from the June 28, 2002 claim be deemed to have begun. In support of this assertion, the Fund cited to Section 287.220.4 which provides:

> If more than one injury in the same employment causes concurrent and consecutive permanent partial disability, compensation payments for each subsequent disability shall not begin until the end of the compensation period of the prior disability.

In a two-to-one decision,[4] the Commission issued its final award affirming the ALJ's award of permanent total disability benefits against the Fund. The Commission, however, agreed with the Fund's proposed modification of the ALJ's final award. The Commission found that the Fund would be liable to Claimant for weekly permanent total disability benefits in the amount of $80.08 from October 22, 2003 through May 16, 2008; in the amount of $409.50 from May 17, 2008 through March 28, 2009; in the amount of $80.08 from March 29, 2009 through July 17, 2011; and in the amount of $409.50 thereafter for his lifetime, or until modified by law. The Commission arrived at this date by calculating the periods during which Claimant was deemed to have been receiving permanent partial disability benefits from either Employer or the Fund from the injuries of May and August 2001 consecutively from May 17, 2001, the date of the earlier injury. The running of the periods of full permanent partial disability benefits from the Fund was suspended during those periods in time in which Claimant was receiving temporary total

4. Commissioner John Hickey issued a dissenting opinion in which he argued against modification.

disability benefits from Employer related to the June 28, 2002 injury. The Commission adopted the final award of the ALJ to the extent it was consistent with the modification.

The Commission based its reasoning on its interpretation of Section 287.220, subsections 1 and 4. The Commission noted that this ruling would result in Claimant receiving an amount equal to his proper weekly compensation rate for permanent total disability as calculated under Section 287.200. Claimant now appeals.

In his sole point on appeal, Claimant argues the Commission erred in interpreting and applying Section 287.220.4 and delaying the Fund's liability for full permanent total disability benefits until July 18, 2011. Claimant further contends the Missouri Legislature did not intend that Section 287.220.4 apply to the Fund and that it should not interfere with Claimant's entitlement to reimbursement for lost earning potential in a claim which involves an employee who is found to be permanently and totally disabled. We agree.

We review the decision of the Commission pursuant to Section 287.495. *Hampton*, 121 S.W.3d at 222. Under Section 287.495.1, we may modify, reverse, remand for hearing, or set aside the Commission's award only if we find: (1) that the Commission acted without or in excess of its powers; (2) that the award was procured by fraud; (3) that the facts found by the Commission do not support the award; or (4) that there was not sufficient competent evidence in the record to warrant the making of the award. *Id.*

We review decisions of the Commission which are interpretations or applications of law de novo. *Pierson v.*

*Treasurer of the State of Missouri, as Custodian of the Second Injury Fund,* 126 S.W.3d 386, 387 (Mo. banc 2004). Workers' Compensation Law is to be liberally construed with a view to public welfare, though substantial compliance with the statutes is sufficient to give effect to the Commission's awards. *Id.* at 387–388. All doubts are to be resolved in favor of the employee. *Id.*

Here, there were several undisputed conclusions reached by both the ALJ and the Commission. First, Claimant had two injuries which pre-existed the injury of June 28, 2002 and which caused him to suffer permanent partial disability. These included permanent partial disabilities of 15 percent of the body as a whole caused by an injury of May 17, 2001 and 60 percent of the body as a whole caused by an injury of August 31, 2001. Second, on June 28, 2002, Claimant sustained an injury by way of an occupational disease and this injury combined with his pre-existing disabilities produced a permanent total disability. Liability for the permanent total disability began running on October 21, 2003, the date of Claimant's maximum medical improvement. Liability for the total disability was divided between Employer and the Fund as 30 percent of the body as a whole, for permanent partial disability against Employer with lifetime benefits against the Fund for permanent total disability.

A dispute arose, however, when the Commission reversed the ALJ's award and ordered that both Employer's and the Fund's liability for the June 28, 2002 injury shall not begin to run until March 29, 2009, with full Fund liability not beginning until July 18, 2011.[5] Claimant contends

---

**5.** The Commission's award contains a factual error in that it states Employer's liability "runs through July 17, 2011," and "[o]n June 18, 2011, [Second Injury Fund] liability for full permanent total disability benefits begins." Based on the record, we assume the

that this order resulted from an improper interpretation and application of Section 287.220.4.

■■ We interpret the workers' compensation law according to the general rules of statutory construction. *Frazier v. Treasurer of Missouri as Custodian of the Second Injury Fund,* 869 S.W.2d 152, 156 (Mo.App. E.D.1993)(overruled by *Hampton,* 121 S.W.3d at 228). We will not create an ambiguity in a statute, where none exists, in order to depart from a statute's plain and ordinary meaning. *Premium Standard Farms, Inc. v. Lincoln Tp. of Putnam County,* 946 S.W.2d 234, 239 (Mo. banc 1997). Our primary goal is to ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms used. *Frazier,* 869 S.W.2d at 156.

Section 287.220.1 provides in pertinent part as follows:

> All cases of permanent disability where there has been previous disability shall be compensated as herein provided.... If any employee who has a preexisting permanent partial disability whether from compensable injury or otherwise, of such seriousness as to constitute a hindrance or obstacle to employment or to obtaining reemployment if the employee becomes unemployed, and the preexisting permanent partial disability, if a body as a whole injury, equals a minimum of fifty weeks of compensation or, if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability, according to the medical standards that are used in determining such compensation, receives a subsequent compensable injury resulting in additional permanent partial disability so that the degree or percentage of disability, in an amount equal to a minimum of fifty weeks compensation, if a body as a whole injury or, if a major extremity injury only, equals a minimum of fifteen percent permanent partial disability, caused by the combined disabilities is substantially greater than that which would have resulted from the last injury, considered alone and of itself, and if the employee is entitled to receive compensation on the basis of the combined disabilities, the employer at the time of the last injury shall be liable only for the degree or percentage of disability which would have resulted from the last injury had there been no preexisting disability. *After the compensation liability of the employer for the last injury, considered alone, has been determined by an administrative law judge or the commission, the degree or percentage of employee's disability that is attributable to all injuries or conditions existing at the time the last injury was sustained shall then be determined by that administrative law judge or by the commission and the degree or percentage of disability which existed prior to the last injury plus the disability resulting from the last injury, if any, considered alone, shall be deducted from the combined disability, and compensation for the balance, if any, shall be paid out of a special fund known as the second injury fund, hereinafter provided for.* If the previous disability or disabilities, whether from compensable injury or otherwise, and the last injury together result in total and permanent disability, the minimum standards under this subsection for a body as a whole injury or a major extremity injury shall not apply and the employer at the time of the last injury shall be liable only for the disability resulting from the last injury consid-

Commission intended the Fund's full liability to begin on July 18, 2011.

ered alone and of itself; *except that if the compensation for which the employer at the time of the last injury is liable is less than the compensation provided in this chapter for permanent total disability, then in addition to the compensation for which the employer is liable and after the completion of payment of the compensation by the employer, the employee shall be paid the remainder of the compensation that would be due for permanent total disability under section 287.200 out of a special fund known as the "Second Injury Fund"* hereby created exclusively for the purposes as in this section provided and for special weekly benefits in rehabilitation cases.

[Emphasis added.] While there is no case specifically addressing the interplay between Sections 287.220.1 and .4, *Frazier* is instructive in its discussion of Section 287.220 in general with respect to Fund liability. In *Frazier*, as here, the Fund argued that it should be provided with an offset against benefits owed to an injured worker because of pre-existing permanent partial disability. *Frazier*, 869 S.W.2d at 156. Although *Frazier* is factually distinguishable from the case at bar, the principles which guided the court in reaching its decision are applicable here. The *Frazier* court rejected the Fund's request for an offset, stating: "[n]owhere in § 287.220 or any other provision of the Workers' Compensation Act does the legislature provide for an offset for prior settlement by the Second Injury Fund." *Id.* at 156. The court reasoned that had the legislature desired such an offset, it would have included a relevant provision in the statute. *Id.* The *Frazier* court then concluded, "[t]he legislature's failure to include an offset provision for prior second injury

fund payments leads us to the conclusion such an offset was not intended." *Id.*

■ As in *Frazier*, the Commission's decision here violates principles of statutory construction because its interpretation of the plain language of Section 287.220.1 caused it to expand Section 287.220.4 beyond the plain language of the statute. In fact, the Commission exceeded the scope of Section 287.220.4 in not only applying the section to permanent total disability benefits, but to temporary total disability benefits as well. The clear and unambiguous language of the statute does not include temporary benefits.

Section 287.220.1 entitles the Fund to a credit against permanent partial disability paid by an employer for the last injury considered alone.[6] Section 287.220.4 speaks only to the timing of payments for consecutive permanent partial disabilities and does not address the issue of set-offs or credits as raised by the Fund in this appeal. We find the Commission erred in using Section 287.220.1 to interpret Section 287.220.4. After analyzing Section 287.220.1, the Commission states "we are convinced the same reasoning applies to the interpretation of § 287.220.4." When the Commission made this inference, it went beyond the plain meaning of Section 287.220.4 because it found the Fund entitled to a credit for payments made by Employer for earlier injuries. Nothing in the plain language of the statute gives any indication this was the legislature's intent.

Further, the Commission's decision expands the plain language of the statute by erroneously linking Sections 287.220.1 and 287.220.4. While Section 287.220.1 specifically discusses the obligations of the Fund with regard to paying an award, Section 287.220.4 never mentions the Fund or

---

**6.** This is the weekly differential in a permanent total disability case between what an employer pays in permanent partial disability and a claimant's permanent total disability rate.

credits. By its plain language, Section 287.220.4 applies only to concurrent and consecutive awards for permanent *partial* disability against the same employer.[7]

■ While the Fund may receive a credit against payments by an employer in cases of permanent total disability, that situation is clearly defined and limited by Section 287.220.1 to the specific instance where permanent total disability results from a combination of a claimant's primary and pre-existing injuries. *See Birdsong v. Waste Management,* 147 S.W.3d 132, 138 (Mo.App. S.D.2004). Here, the Commission's decision and misinterpretation of the law effectively precludes payments for multiple injuries at the same time thereby extending the timeline of Claimant's payments, extending the obligation of Employer, and putting off the time at which the Fund is liable for full permanent total disability payments. The decision erroneously requires that all of Employer's prior obligations be expended before any payments by the Fund for permanent total disability are made and it precludes multiple payments for different injuries at the same time.

The case relied on by the Commission, *Laturno v. Carnahan,* 640 S.W.2d 470, 471 (Mo.App. E.D.1982), is distinguishable from the case at bar. In *Laturno,* the court used Section 287.220.1 to analyze the weekly differential between the permanent partial disability due a claimant from an employer and the permanent total disability due a claimant by the Fund. *Id.* Howev-

er, nothing in the plain language of Section 287.220.1 or Section 287.220.4 prevents the Fund from being obligated for permanent total disability payments from running concurrently with permanent partial disability payments made by an employer in an earlier injury. Because no case law or statute addresses the issue, the timing of payments must be determined independently for each injury and the Commission erred when it used Section 287.220.1 to interpret Section 287.220.4.

■ In addition, the Commission's interpretation and application of Section 287.220.4 is contrary to the legislative intent behind the statute. The general language of Section 287.220.4 existed prior to the creation of the Fund in 1943. *See* Section 3317(c), RSMo 1929.[8] Therefore, the precursor to Section 287.220.4 necessarily applied only to employers. Further, the general purpose of Section 287.220 is to encourage the employment of individuals with disabilities by (1) partially relieving employers from their liability to employees for disabilities not specifically attributable to injury suffered while in their employment and (2) protecting employees by providing a source from which employees are compensated for that portion, if any, of their disability attributable to their last injury. *Stewart v. Johnson,* 398 S.W.2d 850, 853 (Mo. banc 1966). The application of Section 287.220.4 to employers logically serves this general purpose. Specifically, the requirement of "more than one injury *in the same employment* "

---

7. The Fund argues that Section 287.220.4 applies in this case because there was an award of permanent partial disability against Employer in the amount of 30% of the body as a whole as a result of the June 28, 2002 injury. While there was an award of permanent partial disability against Employer from the June 28, 2002 injury, the award in that claim resulted in a finding that Claimant was permanently and totally disabled. Therefore, by its own terms, Section 287.220.4 does not apply in this case because this claim does not in-

volve concurrent and consecutive permanent partial disabilities.

8. This section provided:

If more than one injury in the same employment causes concurrent and consecutive permanent disability, compensation payments for each subsequent disability shall not begin until the end of the compensation period of the prior disability.

serves the purpose by spreading out one employer's liability over time, thereby encouraging continued employment of the disabled employee. However, the purpose is not served by allowing the Fund to receive such relief in its compensation payments. In fact, prolonging the Fund's compensation payments could lead to illogical and inequitable results.[9] Also, applying Section 287.220.4 to the Fund would not serve the purpose of encouraging employment of individuals with preexisting disabilities because the application of Section 287.220.4 occurs in the specific context of "the same employment."

Further, the Commission holds that employees cannot receive more than the weekly statutory permanent total disability benefit. In fact, the statutory language in Sections 287.220.1 and 287.220.4 set no weekly limit on the amount of money that can be paid to an employee in a given week for multiple injuries. While Section 287.220.1 defines weekly compensation for permanent partial disability and permanent total disability by the Fund, it does not set a limit on the total payments one can receive in a given week. Further, Section 287.220.1 does not refer to Section 287.220.4 nor does it mention an offset for the Fund for payments made by an employer in an earlier injury. Limits to and powers of the Fund are expressed by statute.[10] The credit requested by the Fund is not mentioned in Section 287.220.4; it was error for the Commission to grant the Fund a setoff.

■ The Commission incorrectly interpreted and applied Section 287.220.4 to this case. The language of Section 287.220.4 is unambiguous. Section 287.220.4 was intended to apply only to concurrent and consecutive awards for permanent partial disability against the same employer. Section 287.220.4 does not apply to the Fund, and does not apply to a claim in which the employee is found to be permanently and totally disabled. The Commission's decision is therefore reversed and remanded with instructions to reinstate the ALJ's final award.

NANNETTE A. BAKER, P.J. and SHERRI B. SULLIVAN, J., concur.

---

9. The first potentially illogical and inequitable result would be where two different employees sustained the same injuries. For example, Employee # 1 sustains a series of injuries and is ultimately rendered permanently and totally disabled while working for the same employer. Employee # 1 would receive full compensation for permanent partial disability for each injury and for permanent total disability, if the injuries occurred over an extended period of time. Employee # 2 sustains the same injuries as Employee # 1 with the same employer resulting in permanent partial disabilities and eventually permanent total disability. If Employee # 2's injuries occurred over a shorter period of time than Employee # 1's, Employee # 2 would not receive full compensation for his permanent partial disabilities and his permanent total disability.

A second potentially illogical and inequitable result would be where two different employees, one with the same employer, one with multiple employers, sustained a series of successive injuries that resulted in permanent total disability. For example, Employee # 1 sustains the series of successive injuries over a short period of time with the same employer. Employee # 2 sustains the same series of injuries, over the same time period as Employee # 1, resulting in permanent partial disabilities and ultimately permanent total disability but with one of the successive injuries occurring with a different employer. It is likely Employee # 1 would receive less than full compensation for his permanent partial disabilities, while Employee # 2 would be eligible for full compensation benefits.

10. *See State ex rel. Lakeman v. Siedlik,* 872 S.W.2d 503, 506 (Mo.App. W.D.1994).